# EXHIBIT A

Filed
D.C. Superior Court
08/07/2017 11:34AM
Clerk of the Court

**SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| JAIMIE SHAPIRO<br>1160 Wimbledon Drive<br>McLean, Virginia 22101<br><br>Plaintiff,<br><br>v.<br><br>KATTEN MUCHIN ROSENMAN LLP<br>2900 K Street, N.W.<br>North Tower - Suite 200<br>Washington, D.C. 20007-5118<br><br>Serve: National Registered Agents Inc.<br>1015 15th Street, N.W., Suite 1000<br>Washington, D.C. 20005<br><br>and<br><br>S. SCOTT MORRISON<br>10901 Riverwood Drive<br>Potomac, Maryland 20854-1337<br><br>and<br><br>DANIEL C. SPURLOCK<br>425 4th Street, N.E.<br>Washington, D.C. 20002-4901<br><br>and<br><br>RONALD D. PAUL<br>11412 Twinning Lane<br>Potomac, Maryland 20854<br><br>and<br><br>ZACH WADE<br>6328 Broad Street<br>Bethesda, Maryland 20816 | **COMPLAINT**<br><br>Civil Action No. 2017 CA 005368 B |

and )
)
MAKEOFFICES, LLC )
1015 15th Street, N.W., Suite 600 )
Washington, D.C. 20005 )
)
Serve: Superintendent of Corporations )
1100 4th Street, S.W., 4th Floor )
Washington, DC 20024 )
)
Defendants. )
)

**COMPLAINT**

JAIMIE SHAPIRO ("Ms. Shapiro"), by counsel, hereby moves this Court for Judgment, against the Defendants, KATTEN MUCHIN ROSENMAN LLP ("Katten Muchin Rosenman"), S. SCOTT MORRISON ("Mr. Morrison"), DANIEL C. SPURLOCK ("Mr. Spurlock"), RONALD D. PAUL ("Mr. Paul"), ZACH WADE ("Mr. Wade"), AND MAKEOFFICES, LLC ("MakeOffices") jointly and severally, and in support thereof, states as follows:

1. This is a civil action alleging unlawful termination, retaliation, and discrimination based on gender, pregnancy, and disability and aiding and abetting thereof under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-401.01, *et seq.*, D.C. Code § 2-1402.01, *et seq.*, and D.C. Code § 2-2402.11, *et seq.*

2. This action also states claims for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*, invasion of privacy, breach of contract, conspiracy, defamation, tortious interference with contractual or business expectancy, and intentional infliction of emotional distress.

**SUMMARY OF CONDUCT GIVING RISE TO THIS COMPLAINT**

3. Ms. Shapiro is the former General Counsel and Chief of Staff of MakeOffices, a Virginia company that leases office space for the purpose of subleasing portions of the space to companies and individuals on a temporary basis. Ms. Shapiro is 31 years old, seven months

pregnant and underwent a double mastectomy in May of 2016. Despite being told on numerous

occasions by her employer MakeOffices that she had performed exemplary work and had no

performance issues, Ms. Shapiro was suddenly and without warning terminated "for cause" on

June 19, 2017. At the time of the termination, Ms. Shapiro was handed an unsigned letter by

Zach Wade, the current CEO of MakeOffices, which included an attachment purporting to form

the basis for the "for cause" termination. The attachment had nothing to do with Ms. Shapiro's

performance at MakeOffices while Mr. Wade had been the CEO (since April 10, 2017),

contained false and defamatory statements about Ms. Shapiro, and was prepared by Katten

Muchin Rosenman, S. Scott Morrison and Daniel Spurlock, attorneys who represented Ronald

Paul and Zach Wade in other entities, but who did not represent MakeOffices. Katten Muchin

Rosenman, S. Scott Morrison and Daniel Spurlock created the false and defamatory document

attached to the termination letter in an effort to aid and abet Zach Wade, Ronald Paul and

MakeOffices in discriminating and retaliating against Ms. Shapiro because of her health issues

and pregnancy, and because Ms. Shapiro would not engage in unethical and illegal conduct.

    4.    Zach Wade published the defamatory termination letter and attachment to

multiple individuals, yet he admitted that he did not agree with its content, and further admitted

that the termination of Jaimie Shapiro was discussed at a meeting which included Ronald Paul,

Zach Wade, S. Scott Morrison, Daniel Spurlock and other attorneys at Katten Muchin Rosenman

on June 17, 2017 in which Katten Muchin Rosenman, S. Scott Morrison, Daniel Spurlock and

Ronald Paul directed Zach Wade to terminate Ms. Shapiro and use the defamatory letter and

attachment as the proffered legitimate business justification to cover up the true motivations for

terminating Ms. Shapiro, which were based on discriminatory and retaliatory animus, and

because Ms. Shapiro refused to engage in illegal and unethical conduct.

5. In an effort to attempt to cover up the discriminatory and retaliatory termination of Ms. Shapiro by trying to find some after-the-fact basis for a "proffered legitimate business justifications," S. Scott Morrison, Daniel Spurlock and Katten Muchin Rosenman engaged in illegal and unethical searches of Ms. Shapiro's emails at MakeOffices. Included in the illegal and unethical searches were Ms. Shapiro's attorney-client privileged emails with outside counsel for MakeOffices, personal counsel, and perhaps most egregiously, Daniel Spurlock, in conjunction with S. Scott Morrison and Katten Muchin Rosenman, crafted sexually explicit search terms, thereby further defaming Ms. Shapiro to employees of MakeOffices, and reflecting the level of discriminatory and retaliatory animosity, malice, ill-will and spite S. Scott Morrison, Daniel Spurlock and Katten Muchin Rosenman harbored against Ms. Shapiro.

6. In their personal animosity and rage directed at Ms. Shapiro, S. Scott Morrison, Daniel Spurlock and Katten Muchin Rosenman have engaged in a course of conduct which has included defamation and intentional infliction of emotional distress, departing significantly from any attorney-client or work product privilege (which has been waived in any event), and have targeted Ms. Shapiro viciously because of her double mastectomy, pregnancy and gender, causing extreme emotional distress to Ms. Shapiro. In this process, they have conspired with MakeOffices, Zach Wade and Ronald Paul to torment and terminate Ms. Shapiro while she was experiencing a difficult pregnancy, even though Ms. Shapiro's job performance continued to be exemplary.

**PARTIES**

7. Plaintiff Jaimie Shapiro is a resident and citizen of Fairfax, Virginia. Ms. Shapiro is a former employee of MakeOffices, LLC.

8. Defendant Katten Muchin Rosenman LLP is a limited liability partnership and law firm organized and located in the District of Columbia, with more than 600 attorneys in locations across the United States, London, and Shanghai.

9. Katten Muchin Rosenman, along with and through Mr. Morrison and Mr. Spurlock, serve as counsel for two entities with ownership interests in MakeOffices, but at all times material, did not serve as counsel to MakeOffices.

10. Defendant S. Scott Morrison is an individual and Partner at Katten Muchin Rosenman's Washington, D.C. office located at 2900 K St. N.W., North Tower-Suite 200, Washington, D.C. 20007.

11. At all times relevant hereto, Mr. Morrison was, and is, a Partner of Katten Muchin Rosenman and counsel for MRP UO Partners, LLC and Harris UO Investors, LLC.

12. Defendant Daniel C. Spurlock is an individual and Partner at Katten Muchin Rosenman's Washington, D.C. office located at 2900 K St. N.W., North Tower-Suite 200, Washington, D.C. 20007.

13. At all times relevant hereto, Mr. Spurlock was, and is, a Partner of Katten Muchin Rosenman and counsel for MRP UO Partners, LLC and Harris UO Investors, LLC.

14. Defendant Ronald D. Paul is an individual who conducts substantial business within the District of Columbia; he is the Chief Executive Officer of EagleBank and co-founder of Harris UO Investors, LLC.

15. Defendant Zach Wade is an individual who conducts substantial business within the District of Columbia; he is the Chief Executive Officer and member of the Board of Directors of MakeOffices, LLC, and is a Principal with MRP Realty, and a Director of MRP UO Partners, LLC.

16. Defendant MakeOffices is a limited liability company which has a principal place of business in and conducts substantial business in the District of Columbia.

**JURISDICTION AND VENUE**

17. This Court has jurisdiction over the subject matter of this complaint pursuant to D.C. Code Ann. § 11-921 and over the statutory claims pursuant to D.C. Code Ann. § 2–1403.16.

18. Katten Muchin Rosenman is organized under the laws of the District of Columbia and is located in the District of Columbia. Katten Muchin Rosenman is counsel to UO Harris, LLC and MRP UO Partners, LLC and has provided advice and counsel out of its offices in the District of Columbia.

19. Mr. Morrison was, and is, a Partner at Katten Muchin Rosenman in the District of Columbia during the times relevant hereto, and has provided legal advice and counsel out of its offices in the District of Columbia.

20. Mr. Spurlock was, and is, a Partner at Katten Muchin Rosenman in the District of Columbia during the times relevant hereto, and has provided legal advice and counsel out of its offices in the District of Columbia.

21. Mr. Paul is an individual that conducts substantial business in the District of Columbia.

22. Mr. Wade is an individual that conducts substantial business in the District of Columbia and has worked as CEO of MakeOffices out of its office in the District of Columbia.

23. MakeOffices has its principal place of business located in the District of Columbia and conducts substantial business in the District of Columbia.

24.    Ms. Shapiro was terminated in the MakeOffices office located in the District of Columbia.

25.    The Court has personal jurisdiction over Defendants pursuant to D.C. CODE ANN. §§ 13-334, 13-422, and 13-423, because the allegations and claims for relief herein arise from Defendants' "transaction of business" and "doing business" in the District of Columbia and the Defendants are domiciled in or maintain their principal places of business in, the District of Columbia.

26.    Venue is proper in this Court because Defendant's principal place of business is located within the District of Columbia and because a significant part of the events giving rise to Ms. Shapiro's complaint occurred within the District of Columbia, including her termination.

## BACKGROUND

### MakeOffices Shareholder Disputes

27.    Plaintiff Ms. Shapiro was the General Counsel and Chief of Staff of MakeOffices, a co-working and shared office space company, with locations throughout the Washington, D.C. metropolitan area, Chicago and Philadelphia. MakeOffices charges members a monthly fee for its space, ranging from a mailing address and access to networking, up to a private workstation and a plethora of business amenities.

28.    MakeOffices was founded in 2011 as Uber Offices, LLC, and officially changed its name to MakeOffices, LLC in February 2016.

29.    Ms. Shapiro was hired by MakeOffices in August 2013 by MakeOffices' founder and then CEO, Raymond Rahbar. Ms. Shapiro, Mr. Rahbar, Brian Bharwani, Robin Paul Nelson, Shana Glenzer, Reid Fetters, and Ryan McCauley all served as Officers of MakeOffices.

30. MakeOffices consists of five members: IZ Best Bros, LLC; Current Yield with Participation Fund I, LLC; Best Inbestuhment, LLC; MRP UO Partners, LLC ("MRP UO"); and Harris UO Investors ("Harris UO"). Mr. Rahbar owns approximately 62% of MakeOffices through the entitity he controls, IZ Best Bros, LLC; through this entity he is the majority shareholder of MakeOffices.

31. Mr. Wade is a Director MRP UO, and Harris UO's Director is Mr. Paul. Mr. Paul is also the Chairman of EagleBank, Inc. ("EagleBank").

32. Mr. Paul exerts vast influence over MakeOffices, and through his influence EagleBank has provided millions of dollars in financing for MakeOffices.

33. Mr. Paul also exerts further influence through his control of one of the minority members of MakeOffices, Harris UO.

34. Starting in 2016, MRP UO and Harris UO sought to remove Mr. Rahbar as CEO. MRP UO and Harris UO first brought suit against Mr. Rahbar in August 2016, in the case of *MRP UO Partners, LLC, et al. v. Raymond Rahbar, et. al*, CL 2016-11747, in the Circuit Court of Fairfax County ("First Action"). Ms. Shapiro was named as a nominal defendant in the First Action. The First Action was nonsuited following substantial discovery being taken and on the eve of a scheduled hearing on dispositive motions.

35. On January 18, 2017, MRP UO and Harris UO re-filed a new action against Mr. Rahbar, MakeOffices, and thirteen other corporate and individual defendants, including Ms. Shapiro in her individual capacity, in the action *MRP UO Partners, LLC, et. al. v. MakeOffices, LLC, et. al.*, CL 2017-00817, before the Circuit Court of Fairfax County (the "Second Action").

MRP UO and Harris UO are represented by Katten Muchin Rosenman, Mr. Morrison, and Mr. Spurlock.

36.     An Amended Complaint was filed in the Second Action on April 7, 2017.

37.     Certain members of the Board of Directors of MakeOffices signed a Consent Order on April 8, 2017 naming Mr. Wade CEO of the company.

38.     Mr. Wade took over as CEO of MakeOffices on April 10, 2017.

39.     A Consent Order of Stay was entered into in the Second Action on April 24, 2017.

40.     Notwithstanding the allegations of the Second Action, Ms. Shapiro was retained in her positions of MakeOffices' General Counsel and Chief of Staff after Mr. Wade took over as CEO.

41.     Specifically, Mr. Wade and Mr. Paul met with Ms. Shapiro in mid-April 2017, told her she was an extremely valued and highly respected employee of MakeOffices, that they did not believe she had done anything wrong in her actions at MakeOffices, that they had read everything their attorneys at Katten Muchin Rosenman had provided in connection with the First and Second Actions, and they remained of the belief that Ms. Shapiro had done nothing wrong, that they were going to instruct their attorneys to dismiss Ms. Shapiro from the Second Action, and they believed this was in the best interests of MakeOffices as well, since Ms. Shapiro would remain in her role as General Counsel and Chief of Staff.

42.     When Mr. Paul and Mr. Wade so instructed their attorneys, Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock, they refused to dismiss Ms. Shapiro, stating that Ms. Shapiro was needed as leverage for them to obtain a more favorable result against Mr. Rahbar,

because of Mr. Rahbar's sympathy for Ms. Shapiro being included given her health history (double mastectomy in 2016), and now her pregnancy with complications.

43.    When Mr. Wade pressed Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock, given Ms. Shapiro's continuing employment with MakeOffices and the difficulty in reconciling Ms. Shapiro's alleged misconduct while continuing her in a trusted role, Mr. Morrison became enraged and "yelled" at Mr. Wade.

44.    By disclosing their conversations to third parties, Mr. Wade and Mr. Paul have waived attorney client privilege surrounding their communications with Katten Muchin Rosenman.

45.    Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock, enraged and personally and professionally compromised by their clients believing and requesting that Ms. Shapiro be dismissed from the Second Litigation while they refused, and in an attempt to hide their true motivations to target Ms. Shapiro because of her health and pregnancy, set out on a vicious, malicious course of action to discriminate and retaliate against Ms. Shapiro in her employment with MakeOffices, defame and inflict emotional distress on Ms. Shapiro, invade her privacy and procure her termination.

46.    Ms. Shapiro repeatedly questioned the conduct and stated that she believed that she was being targeted and discriminated against on the basis of her gender, her health status and her pregnancy.

47.    Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock have continued to illegally access Ms. Shapiro's privileged and private emails, in their continuing efforts to inflict harm upon and illegally target Ms. Shapiro.

**Illegal Searches of Ms. Shapiro's E-mails**

48. In a desperate attempt to find any information to use against Ms. Shapiro to cover up the discriminatory and retaliatory treatment and termination of Ms. Shapiro, Katten Muchin Rosenman, Mr. Spurlock, and Mr. Morrison illegally and unethically raided Ms. Shapiro's email account with MakeOffices.

49. Specifically, in early June 2017 and continuing to the present, Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock accessed the emails of Ms. Shapiro at MakeOffices.

50. The emails included highly sensitive attorney-client protected communications.

51. The emails also included MakeOffices' privileged emails with its counsel, through Ms. Shapiro as former General Counsel.

52. Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock did not, and do not, represent MakeOffices and have no legal authority or legitimate basis to invade MakeOffices' privileged emails.

53. Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock were legally obligated for a number of reasons to notify Ms. Shapiro of its intent to access and read her email and to obtain Ms. Shapiro's consent or a Court Order.

54. By invading the privacy of her emails, Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock violated their obligation to work with Ms. Shapiro to preserve the confidences of the communications between Ms. Shapiro and her prior counsel.

55. By invading the privacy of her emails, Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock violated their obligation to preserve the confidences of the communications of any client of Ms. Shapiro, including MakeOffices.

56. During June 2017, the searches the Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock ran included words "F**k," "c**t," "sex," "sexy,"[1] and a variety of other grotesque, outrageous, sexually-explicit, and gender-based search terms.

57. Between June 27, 2017 and July 1, 2017; Katten Muchin Rosenman ran the following searches of Ms. Shapiro's email account: "Undertaking," "Indemnified," "Attorneys Fees," "Ginsburg," "Dimuro," "Bredehoft," "Invoice," "Ethical Duties," "Aid and Direction," "Clark Hill," "Bankroft," "Thorson," "JP Law / Sherry," "Legal@makeoffices.com," "attorney invoice," "Sage Johnson," and "Freeman."

58. Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock conducted the unlawful searches without Ms. Shapiro's consent and were deliberately searching for privileged and private communications.

59. Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock conducted the unlawful searches without the knowledge, consent or authority of Ms. Shapiro.

60. Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock had no legally recognized authority, express, implied, or otherwise, to conduct the searches or review MakeOffices and Ms. Shapiro's private and, in some cases, privileged emails, and these searches and review were illegal.

61. Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock's targeting of Ms. Shapiro in these searches and review of her emails constituted discrimination and retaliation against Ms. Shapiro because of her health issues and pregnancy, because of her gender, and her complaints of discrimination, because she refused to engage in illegal and unethical acts, and in

---

[1] Actual words were used, but asterisks have been inserted for this Complaint.

an attempt to cover up the intentional discrimination and retaliation, to defame and interfere with Ms. Shapiro's employment, and reflected their rage, malice, and animosity towards Ms. Shapiro.

**Ms. Shapiro's Medical Issues**

62. In mid-2016, Ms. Shapiro underwent a double mastectomy for which she took medical leave that same year.

63. Ms. Shapiro is pregnant and expecting her first child in the fall of 2017.

64. Ms. Shapiro's pregnancy has been complicated and she has been diagnosed with hyperemesis gravidarum, a condition characterized by severe nausea, vomiting, weight loss, and electrolyte disturbance.

65. Ms. Shapiro's medical issues have been previously communicated to Defendants and at all times material hereto, Defendants were aware of these issues.

66. Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock have exploited and continued to exploit Ms. Shapiro's medical challenges and her pregnancy, and Defendants have targeted Ms. Shapiro and discriminated and retaliated against Ms. Shapiro, because of her health conditions and pregnancy, because of her gender and her complaints of being treated unfairly because of her health issues and gender.

**Ms. Shapiro's Refusal to Engage in Unethical and Illegal Conduct**

67. Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock, Mr. Paul, Mr. Wade and MakeOffices conspired to prepare an illegal agreement that would terminate Ms. Shapiro, require her to engage in illegal conduct and participate in and permit unethical conduct, release all Defendants (including the attorneys, Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock against whom Ms. Shapiro had asserted claims separate from their clients, yet they insisted on including themselves in the release with their clients) from liability for their illegal conduct.

68. The illegal and unethical demand to sign the "agreement" was made on Saturday, June 17, 2017, with a deadline to accept by 3:00 p.m. Sunday, June 18, 2017.

69. Ms. Shapiro communicated that placing such conditions in an agreement was illegal and unethical and further stating that she was refusing to sign the "agreement" because it included a demand for her to engage in illegal conduct and participate in, be aware of, and permit unethical conduct.

70. Ms. Shapiro is a licensed attorney in Virginia, her acceptance of this unethical demand would place herself in violation of the Virginia Rules of Professional Conduct.

71. Because Ms. Shapiro refused to accept the illegal and unethical demand, Defendants engaged in retaliatory conduct toward Ms. Shapiro.

72. Ms. Shapiro was terminated on June 19, 2017.

73. A significant goal of the conduct was to interfere with Ms. Shapiro's employment and cause her unlawful termination.

**Retaliatory Termination of Ms. Shapiro**

74. On Friday June 16, 2017 Ms. Shapiro sent Mr. Wade an email regarding a project she was working on at MakeOffices.

75. That same day, Mr. Wade sent an email in response to Ms. Shapiro stating: "thanks Jaimie, these are great insights. Very Helpful. Take a look at my revisions responding to your notes and let me know your thoughts."

76. Mr. Wade's email response to Ms. Shapiro on Friday June 16, 2017 implied he had no intention of terminating Ms. Shapiro.

77. After Ms. Shapiro communicated on June 18, 2017 that she would not engage in illegal or unethical conduct being demanded by Defendants, later that same day, Mr. Wade

requested that Ms. Shapiro meet him privately at MakeOffices' Washington, D.C. location located at 1015 15th Street, N.W. #600, Washington, D.C. 20005.

78. Ms. Shapiro met with Mr. Wade as requested on Monday, June 19, 2017.

79. Upon arriving at the office, Ms. Shapiro was ushered into a conference room with Mr. Wade and Erika Camacho ("Ms. Camacho"), the Director of Human Resources at MRP Realty.

80. Ms. Camacho was not an employee of MakeOffices, did not speak for MakeOffices, and had no authority to take any action on behalf of MakeOffices.

81. Ms. Camacho communicated the purpose of the meeting was to discuss the termination of Ms. Shapiro's employment with MakeOffices and that she was being terminated for cause.

82. When Ms. Shapiro asked the reason for cause, Ms. Camacho stated that everything was explained in a folder that she handed to Ms. Shapiro, indicating that she had read the contents, even though she was not an employee of MakeOffices.

83. The folder included an unsigned termination letter, with an attachment, also unsigned.

84. The termination letter attachment included the words "Defendants" and "Plaintiffs" throughout the text.

85. There are no "Defendants" or "Plaintiffs" at MakeOffices.

86. The termination letter and attachment were prepared by Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock, in conspiracy with Mr. Paul and Mr. Wade to create false reasons for terminating Ms. Shapiro "for cause," for the purpose of covering up their discriminatory and retaliatory motivations for illegally terminating Ms. Shapiro.

87.     Prior to and in the termination letter attachment being prepared and communicated to Mr. Paul and Mr. Wade, Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock communicated some of these false and defamatory statements to Mr. Paul and Mr. Wade to try to turn Mr. Paul and Mr. Wade against Ms. Shapiro, in light of Mr. Paul and Mr. Wade's continuing expressed support for Ms. Shapiro and her continuing employment with MakeOffices.

88.     The termination letter attachment contain the following defamatory statements:

a) "Jaimie Shapiro is complicit in this scheme [of Misappropriating Lease Commissions and creating a Contingent Agreement for Mr. Rahbar] . . . Ms. Shapiro . . . attempted to conceal the thefts . . . In violation of her fiduciary duties to MakeOffices as its General Counsel, Ms. Shapiro has never once demanded the return of the stolen funds to the Company, reported the theft to the other Board members, or taken any action with respect to law enforcement authorities. Indeed, Ms. Shapiro has never done anything to remedy these thefts or any of the other wrongdoing by Rahbar"

b) "Rahbar turned to Ms. Shapiro for help, and together they methodically planned to entrench themselves in power, eliminate Plaintiffs' authority, and embezzle remaining Company funds through the Company's subsidiaries . . . The amendments prepared by Ms. Shapiro were specifically designed to provide the legal framework and authorization for certain exorbitant cash payments and in-kind benefits that Rahbar had granted to himself just weeks prior -without the Board's knowledge or approval . . . As General Counsel, Shapiro was familiar with the terms of the Operating Agreement and of Plaintiffs' authority to set Rahbar's salary. Nevertheless, she actively assisted Rahbar to secretly amend the subsidiary operating agreements so as to circumvent MakeOffices's Operating Agreement and the Board. The purpose of her actions was to provide cover for Rahbar to take from the Company hundreds of thousands of dollars in unauthorized salary and other valuable benefits without the Board's knowledge."

c) "Defendants [Mr. Rahbar and Ms. Shapiro] falsified official bank documents and Company records to inflate the build-out

costs of the Company's locations by at least hundreds of thousands of dollars. They did so in order to defraud the Company's landlords into paying excessive reimbursements for the buildouts in order to capture those funds for their personal use . . ."

d) "Ms. Shapiro played an essential role in facilitating this fraudulent scheme against the Company's landlords. It was she who formed and organized the shell entity Raezer Construction, LLC so that it could pose as MakeOffices's general contractor and inflate invoices for supplies and for work actually being done by others."

e) "Ms. Shapiro, along with Rahbar and the Company's other officers, violated Va. Code § 13.1-1028 and the Company Operating Agreement by (1) failing to maintain complete and accurate books and records of the Company's financial and business affairs; (2) failing to create and maintain a financial repository cloud for all financial records of the Company that is accessible to all members at any time and without notice; (3) denying Plaintiffs' access to those records despite repeated reasonable demands; and (4) routinely failing to deliver the necessary financial reporting to the Board and the Members."

f) "Ms. Shapiro, along with Rahbar, spearheaded an expansive cover-up and resistance campaign to prevent Plaintiffs from uncovering their misconduct and holding them and the other Defendants accountable. While this campaign ultimately failed, it allowed Rahbar to illegally maintain control of MakeOffices for many months and devastated the Company financially . . . Specifically, both Rahbar and Ms. Shapiro refused to respond to Plaintiffs' requests initially. After several follow-up requests for confirmation that the Written Consent and Audit Review Notice would be complied with, Mr. Bharwani forwarded an e-mail statement from Ms. Shapiro in which she refused to recognize the validity of the Written Consent"

g) "Ms. Shapiro also participated in an illegal effort to keep Rahbar in power despite the Written Action of the Board of Directors removing him."

h) "Ms. Shapiro and Mr. Raezer are the same two people who colluded with Rahbar to misappropriate more than $615,000 in lease commission payments from the Company."

i) "Defendants Shapiro, Raezer, and Rahbar had been conspiring in secret for months to violate the Operating Agreement and seize control of the Board."

j) "Ms. Shapiro's conduct blatantly violated her fiduciary duties to MakeOffices and her duty to not favor one member of the Company over others. Her misconduct and her purported Board appointment also created an inherent conflict of interest for her as the Company's attorney."

k) "[Ms. Shapiro] admitted to drafting severance agreements in violation of her fiduciary duties to the Company."

l) "Ms. Shapiro called for Clark Hill's termination in order to install a different law firm as the Company's counsel that she and Rahbar could control and that would treat their personal interests as if they were the same as the Company's interests."

m) "Ms. Shapiro's actions, and her refusal to step down as General Counsel, left the Company deadlocked and paralyzed for many months and caused it millions of dollars in financial and reputational harm."

n) "Ms. Shapiro was not merely reacting to Plaintiffs, nor was she surprised at their removal of Rahbar. Rather, she had methodically and broadly planned in advance with Rahbar to entrench themselves in power and to eliminate Plaintiffs' authority, because they expected to be targeted for removal once their schemes were uncovered."

o) "Ms. Shapiro also led an improper and unethical effort to put into place invalid severance agreements for herself and her co-Defendants. The purpose of these agreements was to enrich the Defendants in the event their schemes were discovered by Plaintiffs and they were terminated as a result."

p) "Ms. Shapiro instructed the Company's outside counsel to lie and falsely claim to have written the illicit documents so that she would not get into trouble if they were discovered . . . Ms. Shapiro also took concerted steps to cover her tracks by sending the draft agreements from her personal e-mail account, rather than her Company e-mail account."

q) "When Plaintiffs did discover Defendants' misconduct and began acting to protect MakeOffices, Ms. Shapiro joined Rahbar in carrying out a multi-faceted campaign of retaliation

against Plaintiffs. Like the cover-up campaign, the retaliation campaign was a desperate effort by Ms. Shapiro to avoid culpability for herself, Rahbar, and their co-conspirators."

r)  "Ms. Shapiro's retaliatory acts in furtherance of the Defendants' conspiracy have included at least the following: On July 27, 2016, Shapiro wrote letters to all of the Company's landlords . . . Shapiro's statements to Company landlords carried significant implications for MRP UO's reputation and standing in the real estate industry . . .she was again acting to protect Rahbar and assist him in maintaining management control of the Company to hide their misconduct and misappropriation. Ms. Shapiro knew these statements were demonstrably false, yet she made them anyway to dissuade the landlords from communicating with MRP UO and to inhibit its ability to properly conduct and oversee the operations of MakeOffices's business."

s)  "Shapiro conspired with Rahbar and the other Defendants to cut Plaintiffs off from MakeOffices's business and squeeze MRP UO out of the Company. They attempted to divest Plaintiffs of their majority vote on the Board by conspiring to secretly appoint herself and Defendant Raezer to the Board of Directors. They also denied MRP UO access to Company books and records and withheld tax information that it needed to comply with its tax obligations. Defendants, including Ms. Shapiro specifically, also frivolously challenged MRP UO's membership in the Company based upon a concocted theory that MRP UO supposedly failed to satisfy its capital contribution obligation . . .Ms. Shapiro . . . intended . . . to punish MRP UO for investigating her role."

t)  "Defendant Rahbar, with Ms. Shapiro's knowledge and input, knowingly violated material obligations set forth in the Facility Agreement by creating bank accounts for MakeOffices and its subsidiaries at other financial institutions, including BB&T and Bank of America. They also diverted funds that should have been deposited into MakeOffices's bank accounts at EagleBank into accounts at other banks that are owned or controlled by Rahbar and/or Raezer."

u)  "Rahbar's actions, which were done with Ms. Shapiro's knowledge and complicity, knowingly placed the Company in technical default of its loan obligations with EagleBank, putting its very existence at risk."

v)   "Defendants sought to deter Plaintiffs' investigation, and they
wanted to first move the Company's funds out of the hands of
EagleBank. Ms. Shapiro . . . has pretended that Rahbar's
actions were appropriate and helped him to conceal them by
blocking Plaintiffs' efforts to access the Company's books and
records."

w)   "In rank retaliation towards Ron Paul, Rahbar and Ms. Shapiro
callously fired his daughter without warning and despite her
stellar performance as an employee. Plaintiffs know that Ms.
Shapiro was involved in - and perhaps was responsible for - the
decision to fire Ms. Nelson for retaliatory purposes, because
they obtained e-mails in which Ms. Shapiro directs Rahbar to
speak to her about Ms. Nelson."

x)   "Ms. Shapiro sent these e-mails during the run-up to Ms.
Nelson's firing and during the period when Defendants were
covertly surveilling her electronically. Plaintiffs also know that
Ms. Nelson's firing was retaliatory, because Rahbar told her it
was. Ms. Nelson sated in an e-mail shortly after her firing."

y)   Ms. Shapiro "never reported th[e] illegal motive [for firing Ms.
Nelson] to the Board or outside authorities, or otherwise tried
to do anything at all to help Ms. Nelson. And, conveniently,
Ms. Shapiro never attempted even to offer Ms. Nelson the kind
of exorbitant severance package that she created for herself."

89.     Each of the above statements were false and intentionally misleading, Defendants

knew them to be false and intentionally misleading, or made them with reckless disregard for the

truth or falsity, and each statement constitutes defamation and defamation *per se*.

90.     Mr. Wade and Ms. Camacho attempted to dissuade Ms. Shapiro from reading the

termination letter and attachment while there, instead encouraging her to take it with her and read

later.

91.     Notwithstanding, Ms. Shapiro read the termination letter and attachment while

remaining in the meeting.

92.     Ms. Shapiro, stunned, looked directly at Mr. Wade and asked if he actually

believed anything contained in the termination letter and attachment.

93. Mr. Wade, looking extremely uncomfortable, told Ms. Shapiro he had been instructed not to engage in any dialogue with her. Significantly, Mr. Wade did not state that he believed these statements to be true.

94. In fact, Mr. Wade knew the statements contained in the termination letter and attachment to be false, intentionally misleading and defamatory.

95. Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock, the authors of the termination letter attachment, published this to Mr. Paul, Mr. Wade, Ms. Camacho, and were responsible and liable for the publication and republication each of the statements made in the letter.

96. No privilege attaches, as Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock did not represent MakeOffices, and their communications with Mr. Paul and Mr. Wade relating to Ms. Shapiro had been waived.

97. In addition to the publication of the false and defamatory statements in the letter to Ms. Camacho, a third party not employed by MakeOffices, Mr. Wade published the termination letter and attachments to others, including Chris Junior.

98. In addition, Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock, the authors of the termination letter attachment, published the false and defamatory statements to Mr. Paul, Mr. Wade, and Ms. Camacho, and were responsible and liable for the publication and republication of these statements.

99. The attorney-client privilege relationship between and among Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock, and Mr. Paul, Mr. Wade and/or MakeOffices (to the extent one is claimed) have been waived.

100. After Ms. Shapiro was terminated, Mr. Wade made the following statements to other individuals:

a) That he met with Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock on Saturday (June 17, 2017);

b) At the June 17, 2017 meeting, Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock ordered him to terminate Ms. Shapiro on June 19, 2017;

c) That Mr. Wade met with his counsel on Saturday, June 17, 2017, and that his counsel told him that he "had to fire [Ms. Shapiro] on Monday."

d) That Mr. Wade was ordered to fire Ms. Shapiro;

e) He did not agree with the decision to terminate Ms. Shapiro, but had no choice;

f) That he had "f*cked up" by not telling other MakeOffices employees in advance of [Ms. Shapiro's] termination, explaining that the decision was incredibly sudden as his counsel had just instructed him just days before;

g) That Ms. Shapiro was terminated for "legal reasons;"

h) That Ms. Shapiro "knew more about Mr. Rahbar's wrongdoings than she had let on;"

i) That "[Mr. Wade] f*cked up, [he] know[s] [he] f*cked up" in regards to Ms. Shapiro's termination;

j) That Ms. Shapiro "may be back, its not the end necessarily," but then said "no, she wouldn't work here [though].

101. Any privileges associated with the statements made in the termination letter and attachment have been waived.

102.   MakeOffices terminated the employment of Ms. Shapiro due to the interference of Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock, Mr. Paul and Mr. Wade, which included defamation, conspiracy, invasion of privacy and conspiracy.

103.   MakeOffices, with the other Defendants' conspiracy and participation, terminated Ms. Shapiro because of their discriminatory and retaliatory animus towards Ms. Shapiro, and because she would not engage in illegal and unethical conduct.

**Mr. Shapiro's Severance Agreement**

104.   On July 18, 2016 MakeOffices, with an agreement negotiated and finalized through MakeOffices' outside counsel DLA Piper, presented Ms. Shapiro a Severance Agreement, for the purpose of retaining Ms. Shapiro as a key employee in light of the instability that had been created by the shareholder dispute and the ultimate denial of granting shares earlier promised to Ms. Shapiro and the other key employees.

105.   The Severance Agreement provided that in the event Ms. Shapiro was terminated without cause prior to July 18, 2017, she was to receive a severance amount of $200,000 upon the termination of her employment.

106.   Ms. Shapiro accepted the Severance Agreement.

107.   Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock were aware of this Severance Agreement.

108.   Mr. Paul and Mr. Wade were aware of the Severance Agreement.

109.   Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock intentionally interfered with Ms. Shapiro's Severance Agreement by defaming Ms. Shapiro relating to the propriety of, involvement in and other related claims, as set forth in ¶¶ 87(k)(o) and (p) above, falsely stated that Ms. Shapiro's involvement in the Severance Agreement was "self-dealing,"

even though the involvement Ms. Shapiro had in the Severance Agreements was perfectly ethical, appropriate and typical for General Counsels in similar circumstances, and in discriminating and retaliating against Ms. Shapiro and aiding and abetting other Defendants to discriminate and retaliate against Ms. Shapiro, defaming Ms. Shapiro, invading her privacy and intentionally inflicting emotional distress on Ms. Shapiro, leading to the false depiction of Ms. Shapiro's termination as "for cause."

110. Such conduct as described above was engaged in with the express purpose of interfering with Ms. Shapiro's Severance Agreement, and causing MakeOffices to breach its Agreement with Ms. Shapiro, and not pay her the severance payment under the Agreement.

111. MakeOffices has breached the Severance Agreement by falsely stating that Ms. Shapiro was terminated for cause, and for refusing to pay the severance amount since terminating Ms. Shapiro.

**COUNT I -**
**AIDING AND ABETTING RETALIATION**
**IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT**
**(Against S. Scott Morrison, Katten Muchin Rosenman, Daniel C. Spurlock, and Ronald D. Paul)**

112. The foregoing allegations are incorporated as if re-alleged herein.

113. Pursuant to D.C. Code § 2-1402.62:

> It shall be an unlawful discriminatory practice for any person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the provisions of this chapter or to attempt to do so.

114. Ms. Shapiro was wrongfully terminated from her position in violation of the D.C. Human Rights Act.

115. Ms. Shapiro was wrongfully terminated in the District of Columbia.

116. Based on the conduct as alleged, Katten Muchin Rosenman, Mr. Morrison, and Mr. Spurlock aided MakeOffices' retaliatory termination of Ms. Shapiro's employment in violation of the DC Human Rights Act by communicating false and defamatory statements to Mr. Paul and Mr. Wade, conducting illegal and unethical searches of Ms. Shapiro's emails, intentionally inflicting emotional distress upon Ms. Shapiro, preparing false and defamatory statements in a termination letter and attachment to create a false reason to terminate Ms. Shapiro for cause, directing Mr. Wade to terminate Ms. Shapiro, and demanding that Ms. Shapiro sign an agreement that would cause her to condone and participate in illegal and unethical conduct.

117. Ms. Shapiro was retained as General Counsel and Chief of Staff of MakeOffices when Mr. Wade became CEO of the company April 10, 2017. Ms. Shapiro was told by Mr. Paul and Mr. Wade that she was extremely valued and highly respected and that they believed she had done nothing wrong while she was the General Counsel and Chief of Staff and in fact, had done the right things, and they wanted to retain her.

118. Ms. Shapiro was in fact retained as General Counsel and Chief of Staff, and was given work that involved a high level of trust.

119. Ms. Shapiro was praised repeatedly by Mr. Wade for her performance.

120. None of the alleged conduct in the termination letter and attachment had anything to do with Ms. Shapiro's job performance between April 10, 2017 and June 19, 2017.

121. Ms. Shapiro performed her job as General Counsel and Chief of Staff without any performance criticisms until her wrongful termination in June 19, 2017.

122. Ms. Shapiro had a reasonable expectation of continued employment with MakeOffices.

123.    As of June 16, 2017, Mr. Wade, the CEO of MakeOffices did not have an intent to terminate Ms. Shapiro.

124.    As set forth above, Katten Muchin Rosenman, Mr. Morrison, and Mr. Spurlock directed Mr. Wade to terminate Ms. Shapiro.

125.    Mr. Paul was complicit in and participated in the decision to terminate Ms. Shapiro and in the decision to provide false and defamatory reasons for the termination in discriminatory and retaliatory animus towards Ms. Shapiro, and joined in the direction to terminate Ms. Shapiro.

126.    Mr. Wade admitted that he knew the reasons for Ms. Shapiro's termination were false, yet he terminated her and gave her a document (termination letter and attachment) that he knew to be false and defamatory, and he knew the real reason for the termination was discriminatory and retaliatory animus towards Ms. Shapiro.

127.    Katten Muchin Rosenman, Mr. Morrison, and Mr. Spurlock were personally and professionally motivated to aid retaliatory termination against Ms. Shapiro to conceal discriminatory and retaliatory conduct, as well as illegal and unethical conduct.

128.    Mr. Paul was personally motivated to aid discriminatory and retaliatory termination against Ms. Shapiro.   After Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock falsely claimed to Mr. Paul that Ms. Shapiro was responsible for the termination of his daughter, Robin Paul Nelson, Mr. Paul turned against Ms. Shapiro and acted with discriminatory and retaliatory animus towards Ms. Shapiro.

129.    Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock and Mr. Paul were personally motivated to aid retaliatory termination against Ms. Shapiro out of personal rage against her.

130. Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock represent MRP UO
Partners, LLC; a company owned in part by Mr. Paul and at which Mr. Wade is a Director.

131. Through this connection as counsel for MRP UO, Katten Muchin Rosenman and
Mr. Paul aided and abetted retaliation by ordering Zach Wade to terminate Ms. Shapiro.

132. Based on the conduct as alleged, Katten Muchin Rosenman, Mr. Morrison, Mr.
Spurlock and Mr. Paul discriminated and retaliated against Ms. Shapiro by coercing,
encouraging, instructing and requesting MakeOffices through Mr. Wade to engage in prohibited
acts under the D.C. Human Rights Act by taking action against her due to her pregnancy status
and health conditions, as well as in retaliation for Ms. Shapiro's questioning and objecting to her
discriminatory treatment and assertion of her rights not to be discriminated against or targeted
because of her health conditions and pregnancy or because she is a woman.

133. Based on the conduct as alleged, Katten Muchin Rosenman, Mr. Morrison, Mr.
Spurlock and Mr. Paul discriminated against Ms. Shapiro in violation of the rights granted to her
under the D.C. Human Rights Act.

134. Based on the conduct as alleged, Katten Muchin Rosenman, Mr. Morrison, Mr.
Spurlock and Mr. Paul discriminated and retaliated against Ms. Shapiro by coercing, threatening,
and interfering with Ms. Shapiro's rights as granted to her under the D.C. Human Rights Act.

135. The Defendants, Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock and Mr.
Paul's discriminatory and retaliatory conduct was intentional, and it evinced ill will,
recklessness, and willful disregard of Ms. Shapiro's rights, as well as wantonness,
oppressiveness, maliciousness, and a spirit of mischief, and therefore punitive damages are
warranted and requested.

136.    The Defendants, Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock and Mr.

Paul's discriminatory and retaliatory conduct had the effect and consequence of violating the

D.C. Human Rights Act.

137.    The proffered legitimate business justification for terminating Ms. Shapiro, as

stated in the termination letter and attachment is false, and Defendants knew they were false, and

they had nothing to do with Ms. Shapiro's job performance, especially during the time Mr. Wade

was CEO leading up to the termination.

138.    Mr. Morrison and Mr. Spurlock are partners of the law firm Katten Muchin

Rosenman.

139.    Mr. Morrison and Mr. Spurlock are individually liable to Ms. Shapiro.

140.    Katten Muchin Rosenman is vicariously liable for the actions of its Partners and

Employees.

141.    As a direct and proximate result of Defendants' actions, Ms. Shapiro has suffered

and continues to suffer severe emotional distress, with physical manifestations, including, but not

limited to, heightened anxiety, development of a stress related sleep disturbance, fear of not

being able to find a job due to being pregnant, fear of not being hired because of Defendants'

defamatory conduct, fear and concern for her future ability to earn a living and provide for her

child, diminished self-confidence and self-worth, feelings of helpless and hopelessness,

insomnia, nightmares, withdrawal from friends and family, crying, sadness, lack of

concentration, humiliation, embarrassment, headaches, exacerbation of her diagnosed

hyperemesis gravidarum and general anxiety disorder, past and future loss of income and

benefits of employment, lost career and business opportunities and advancement, and medical

expenses.  Ms. Shapiro has also experienced physical symptoms while thinking about or

discussing her former employer, including but not limited to severe panic attacks, nausea and becoming physically ill. Ms. Shapiro is constantly wondering and worrying about whether other potential employers, friends and relatives have heard the highly offensive, false and defamatory statements about her, and whether this will cause her to be unable to obtain and/or sustain employment. Defendants' conduct has irreparably harmed Ms. Shapiro's quality of life, professionally and personally.

142. Ms. Shapiro has also incurred attorneys' fees and costs as a result of Defendants' actions.

143. Due to the severity of Defendants' willful, wanton, oppressive, and deliberate conduct Ms. Shapiro is entitled to punitive damages.

**COUNT II -**
**AIDING AND ABETTING GENDER DISCRIMINATION**
**IN THE TERMINATION OF EMPLOYMENT**
**IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT**
**(Against S. Scott Morrison, Katten Muchin Rosenman,**
**Daniel C. Spurlock and Ronald D. Paul)**

144. The foregoing allegations are incorporated as if re-alleged herein.

145. Pursuant to D.C. Code § 2-1402.62:

> It shall be an unlawful discriminatory practice for any person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the provisions of this chapter or to attempt to do so.

146. Pursuant to D.C. Code § 2-1402.11:

> It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon . . .gender . . .

147. Ms. Shapiro was wrongfully terminated from her position in violation of the D.C. Human Rights Act.

148. Ms. Shapiro was wrongfully terminated in the District of Columbia.

149. Ms. Shapiro is a female.

150. Based on the conduct as alleged, Katten Muchin Rosenman, Mr. Morrison, and Mr. Spurlock aided MakeOffices' discriminatory and retaliatory termination of Ms. Shapiro's employment because of her gender in violation of the D.C. Human Rights Act by communicating false and defamatory statements to Mr. Paul and Mr. Wade, conducting illegal and unethical searches of Ms. Shapiro's emails, intentionally inflicting emotional distress upon Ms. Shapiro, preparing false and defamatory statements in a termination letter and attachment to create a false reason to terminate Ms. Shapiro for cause, directing Mr. Wade to terminate Ms. Shapiro, and demanding that Ms. Shapiro sign an agreement that would cause her to condone and participate in illegal and unethical conduct.

151. Ms. Shapiro was retained as General Counsel and Chief of Staff of MakeOffices when Mr. Wade became CEO of the company April 10, 2017, Ms. Shapiro was told by Mr. Paul and Mr. Wade that she was extremely valued and highly respected and that they believed she had done nothing wrong while she was the General Counsel and Chief of Staff and in fact, had done the right things, and they wanted to retain her.

152. Ms. Shapiro was in fact retained as General Counsel and Chief of Staff, and was given work that involved a high level of trust.

153. Ms. Shapiro was praised repeatedly by Mr. Wade for her performance.

154. None of the alleged conduct in the termination letter and attachment had anything to do with Ms. Shapiro's job performance between April 10, 2017 and June 19, 2017.

155. Ms. Shapiro performed her job as General Counsel and Chief of Staff without any performance criticisms until her wrongful termination in June 19, 2017.

156.   Ms. Shapiro had a reasonable expectation of continued employment with MakeOffices;

157.   As of June 16, 2017, Mr. Wade, the CEO of MakeOffices did not have an intent to terminate Ms. Shapiro.

158.   As set forth above, Katten Muchin Rosenman, Mr. Morrison, and Mr. Spurlock directed Mr. Wade to terminate Ms. Shapiro.

159.   Mr. Paul was complicit in and participated in the decision to terminate Ms. Shapiro and in the decision to provide false and defamatory reasons for the termination in discriminatory and retaliatory animus towards Ms. Shapiro, and joined in the direction to terminate Ms. Shapiro.

160.   Mr. Wade admitted that he knew the reasons for Ms. Shapiro's termination were false, yet he terminated her and gave her a document (termination letter and attachment) that he knew to be false and defamatory, and he knew the real reason for the termination was discriminatory and retaliatory animus towards Ms. Shapiro.

161.   Katten Muchin Rosenman, Mr. Morrison, and Mr. Spurlock were personally and professionally motivated to aid in the discriminatory and retaliatory termination against Ms. Shapiro to conceal discriminatory and retaliatory conduct, as well as illegal and unethical conduct.

162.   Mr. Paul was personally motivated to aid discriminatory and retaliatory termination against Ms. Shapiro.  After Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock falsely claimed to Mr. Paul that Ms. Shapiro was responsible for the termination of his daughter, Robin Paul Nelson, Mr. Paul turned against Ms. Shapiro and acted with discriminatory and retaliatory animus towards Ms. Shapiro.

163.    Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock and Mr. Paul were personally motivated to aid in the discriminatory and retaliatory termination against Ms. Shapiro out of personal rage against her and perceived damages to their egos because of her.

164.    Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock represent MRP UO Partners, LLC; a company owned in part by Mr. Paul and at which Mr. Wade is a Director.

165.    Through this connection as counsel for MRP UO, Katten Muchin Rosenman and Mr. Paul aided and abetted retaliation by ordering Zach Wade to terminate Ms. Shapiro.

166.    Based on the conduct as alleged, Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock and Mr. Paul discriminated and retaliated against Ms. Shapiro by coercing, encouraging, instructing and requesting MakeOffices through Mr. Wade to engage in prohibited acts under the D.C. Human Rights Act by taking action against her due to her pregnancy status and health conditions, as well as in retaliation for Ms. Shapiro's questioning and objecting to her discriminatory treatment and assertion of her rights not to be discriminated against or targeted because of her health conditions and pregnancy or because she is a woman.

167.    Based on the conduct as alleged, Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock and Mr. Paul discriminated against Ms. Shapiro in violation of the rights granted to her under the D.C. Human Rights Act.

168.    Based on the conduct as alleged, Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock and Mr. Paul discriminated and retaliated against Ms. Shapiro by coercing, threatening, and interfering with Ms. Shapiro's rights as granted to her under the D.C. Human Rights Act.

169.    The proffered legitimate business justification for terminating Ms. Shapiro, as stated in the termination letter and attachment is false, and Defendants knew they were false, and

they had nothing to do with Ms. Shapiro's job performance, especially during the time Mr. Wade was CEO leading up to the termination.

170. The Defendants, Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock and Mr. Paul's discriminatory and retaliatory conduct was intentional, and it evinced ill will, recklessness, and willful disregard of Ms. Shapiro's rights, as well as wantonness, oppressiveness, maliciousness, and a spirit of mischief, and therefore punitive damages are warranted and requested.

171. The Defendants, Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock and Mr. Paul's discriminatory and retaliatory conduct had the effect and consequence of violating the D.C. Human Rights Act.

172. Mr. Morrison and Mr. Spurlock are partners of the law firm Katten Muchin Rosenman.

173. Mr. Morrison and Mr. Spurlock are individually liable to Ms. Shapiro.

174. Katten Muchin Rosenman is vicariously liable for the actions of its Partners and Employees.

175. As a direct and proximate result of Defendants' actions, Ms. Shapiro has suffered and continues to suffer severe emotional distress, with physical manifestations, including, but not limited to, heightened anxiety, development of a stress related sleep disturbance, fear of not being able to find a job due to being pregnant, fear of not being hired because of Defendants' defamatory conduct, fear and concern for her future ability to earn a living and provide for her child, diminished self-confidence and self-worth, feelings of helpless and hopelessness, insomnia, nightmares, withdrawal from friends and family, crying, sadness, lack of concentration, humiliation, embarrassment, headaches, exacerbation of her diagnosed

hyperemesis gravidarum and general anxiety disorder, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, and medical expenses. Ms. Shapiro has also experienced physical symptoms while thinking about or discussing her former employer, including but not limited to severe panic attacks, nausea and becoming physically ill. Ms. Shapiro is constantly wondering and worrying about whether other potential employers, friends and relatives have heard the highly offensive, false and defamatory statements about her, and whether this will cause her to be unable to obtain and/or sustain employment. Defendants' conduct has irreparably harmed Ms. Shapiro's quality of life, professionally and personally.

176. Ms. Shapiro has also incurred attorneys' fees and costs as a result of Defendants' conduct.

177. Due to the severity of Defendants' willful, wanton, oppressive, and deliberate conduct Ms. Shapiro is entitled to punitive damages.

**COUNT III -**
**AIDING AND ABETTING DISCRIMINATION OF FAMILY RESPONSIBILITIES IN THE TERMINATION OF EMPLOYMENT**
**IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT**
**(Against S. Scott Morrison, Katten Muchin Rosenman, Daniel C. Spurlock and Ronald D. Paul)**

178. The foregoing allegations are incorporated as if re-alleged herein.

179. Pursuant to D.C. Code § 2-1402.62:

> It shall be an unlawful discriminatory practice for any person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the provisions of this chapter or to attempt to do so.

180. Pursuant to D.C. Code § 2-1402.11:

> It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon . . . family responsibilities . . .

181.   Ms. Shapiro was wrongfully terminated in the District of Columbia.

182.   Ms. Shapiro is, and was at all times materially hereto, pregnant.

183.   Based on the conduct as alleged, Katten Muchin Rosenman, Mr. Morrison, and Mr. Spurlock aided MakeOffices' discriminatory and retaliatory termination of Ms. Shapiro's employment on the basis of her pregnant condition, in violation of the DC Human Rights Act by communicating false and defamatory statements to Mr. Paul and Mr. Wade, conducting illegal and unethical searches of Ms. Shapiro's emails, intentionally inflicting emotional distress upon Ms. Shapiro, preparing false and defamatory statements in a termination letter and attachment to create a false reason to terminate Ms. Shapiro for cause, directing Mr. Wade to terminate Ms. Shapiro, and demanding that Ms. Shapiro sign an agreement that would cause her to condone and participate in illegal and unethical conduct.

184.   Ms. Shapiro was retained as General Counsel and Chief of Staff of MakeOffices when Mr. Wade became CEO of the company April 10, 2017, Ms. Shapiro was told by Mr. Paul and Mr. Wade that she was extremely valued and highly respected and that they believed she had done nothing wrong while she was the General Counsel and Chief of Staff and in fact, had done the right things, and they wanted to retain her.

185.   Ms. Shapiro was in fact retained as General Counsel and Chief of Staff, and was given work that involved a high level of trust.

186.   Ms. Shapiro was praised repeatedly by Mr. Wade for her performance.

187.   None of the alleged conduct in the termination letter and attachment had anything to do with Ms. Shapiro's job performance between April 10, 2017 and June 19, 2017.

188.   Ms. Shapiro performed her job as General Counsel and Chief of Staff without any performance criticisms until her wrongful termination in June 19, 2017.

189. Ms. Shapiro had a reasonable expectation of continued employment with MakeOffices and would have had a period of paid maternity leave following the birth of her child.

190. As of June 16, 2017, Mr. Wade, the CEO of MakeOffices did not have an intent to terminate Ms. Shapiro.

191. As set forth above, Katten Muchin Rosenman, Mr. Morrison, and Mr. Spurlock directed Mr. Wade to terminate Ms. Shapiro.

192. Mr. Paul was complicit in and participated in the decision to terminate Ms. Shapiro and in the decision to provide false and defamatory reasons for the termination in discriminatory and retaliatory animus towards Ms. Shapiro, and joined in the direction to terminate Ms. Shapiro.

193. The proffered legitimate business justification for terminating Ms. Shapiro, as stated in the termination letter and attachment is false, and Defendants knew they were false, and they had nothing to do with Ms. Shapiro's job performance, especially during the time Mr. Wade was CEO leading up to the termination.

194. Mr. Wade admitted that he knew the reasons for Ms. Shapiro's termination were false, yet he terminated her and gave her a document (termination letter and attachment) that he knew to be false and defamatory, and he knew the real reason for the termination was discriminatory and retaliatory animus towards Ms. Shapiro.

195. Katten Muchin Rosenman, Mr. Morrison, and Mr. Spurlock were personally and professionally motivated to aid in the discriminatory and retaliatory termination against Ms. Shapiro to conceal discriminatory and retaliatory conduct, as well as illegal and unethical conduct.

196. Mr. Paul was personally motivated to aid discriminatory and retaliatory termination against Ms. Shapiro. After Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock falsely claimed to Mr. Paul that Ms. Shapiro was responsible for the termination of his daughter, Robin Paul Nelson, Mr. Paul turned against Ms. Shapiro and acted with discriminatory and retaliatory animus towards Ms. Shapiro.

197. Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock and Mr. Paul were personally motivated to aid retaliatory termination against Ms. Shapiro out of personal rage against her and perceived damages to their egos because of her.

198. Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock represent MRP UO Partners, LLC; a company owned in part by Mr. Paul and at which Mr. Wade is a Director.

199. Through this connection as counsel for MRP UO, Katten Muchin Rosenman and Mr. Paul aided and abetted retaliation by ordering Zach Wade to terminate Ms. Shapiro.

200. Based on the conduct as alleged, Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock and Mr. Paul discriminated and retaliated against Ms. Shapiro by coercing, encouraging, instructing and requesting MakeOffices through Mr. Wade to engage in prohibited acts under the D.C. Human Rights Act by taking action against her due to her pregnancy status and health conditions, as well as in retaliation for Ms. Shapiro's questioning and objecting to her discriminatory treatment and assertion of her rights not to be discriminated against or targeted because of her health conditions and pregnancy or because she is a woman.

201. Based on the conduct as alleged, Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock and Mr. Paul discriminated against Ms. Shapiro in violation of the rights granted to her under the D.C. Human Rights Act.

202. Based on the conduct as alleged, Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock and Mr. Paul discriminated and retaliated against Ms. Shapiro by coercing, threatening, and interfering with Ms. Shapiro's rights as granted to her under the D.C. Human Rights Act.

203. The Defendants, Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock and Mr. Paul's discriminatory and retaliatory conduct was intentional, and it evinced ill will, recklessness, and willful disregard of Ms. Shapiro's rights, as well as wantonness, oppressiveness, maliciousness, and a spirit of mischief, and therefore punitive damages are warranted and requested.

204. The Defendants, Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock and Mr. Paul's discriminatory and retaliatory conduct had the effect and consequence of violating the D.C. Human Rights Act.

205. Mr. Morrison and Mr. Spurlock are partners of the law firm Katten Muchin Rosenman.

206. Mr. Morrison and Mr. Spurlock are individually liable to Ms. Shapiro.

207. Katten Muchin Rosenman is vicariously liable for the actions of its Partners and Employees.

208. As a direct and proximate result of Defendants' actions, Ms. Shapiro has suffered and continues to suffer severe emotional distress, with physical manifestations, including, but not limited to, heightened anxiety, development of a stress related sleep disturbance, fear of not being able to find a job due to being pregnant, fear of not being hired because of Defendants' defamatory conduct, fear and concern for her future ability to earn a living and provide for her child, diminished self-confidence and self-worth, feelings of helpless and hopelessness, insomnia, nightmares, withdrawal from friends and family, crying, sadness, lack of

concentration, humiliation, embarrassment, headaches, exacerbation of her diagnosed hyperemesis gravidarum and general anxiety disorder, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, and medical expenses. Ms. Shapiro has also experienced physical symptoms while thinking about or discussing her former employer, including but not limited to severe panic attacks, nausea and becoming physically ill. Ms. Shapiro is constantly wondering and worrying about whether other potential employers, friends and relatives have heard the highly offensive, false and defamatory statements about her, and whether this will cause her to be unable to obtain and/or sustain employment. Defendants' conduct has irreparably harmed Ms. Shapiro's quality of life, professionally and personally.

209. Ms. Shapiro has also incurred attorneys' fees and costs as a result of Defendants' conduct.

210. Due to the severity of Defendants' willful, wanton, oppressive, and deliberate conduct Ms. Shapiro is entitled to punitive damages.

**COUNT IV –**
**INVASION OF PRIVACY – INTRUSION UPON SECLUSION**
**(Against MakeOffices, LLC, S. Scott Morrison, Katten Muchin Rosenman, Daniel C. Spurlock and Zach Wade)**

211. The allegations of the foregoing paragraphs are incorporated as if realleged herein.

212. MakeOffices protects its confidential, proprietary and trade secret information on a secure computer system to which access is limited and password-protected.

213.    MakeOffices' computer system is secured to ensure that personal, confidential, proprietary, and trade secret business information is not kept or accessed outside of the secure computer system.

214.    As General Counsel and Chief of Staff, Ms. Shapiro had a reasonable expectation of privacy for her emails, especially because of the role she played in communicating with other counsel, including outside corporate counsel, as part of her job responsibilities.

215.    Ms. Shapiro kept private personal emails at her MakeOffices email account that was password protected.

216.    Ms. Shapiro kept private work emails at her MakeOffices email account that was password protected.

217.    Ms. Shapiro discussed private facts from her work email account at MakeOffices.

218.    As General Counsel for MakeOffices Ms. Shapiro engaged in private and confidential communications with corporate counsel through her MakeOffices email account.

219.    Ms. Shapiro had a reasonable expectation of privacy in maintaining both private and work communications on her email account, given her position with MakeOffices of General Counsel and Chief of Staff and also the protections of the Court, the Rules of Professional Responsibility, the appropriate Ethics Rules and the law.

220.    S. Scott Morrison, Katten Muchin Rosenman, and Daniel C. Spurlock, knowing that they were not allowed to access the email accounts, gained illegal access to and intentionally intruded through an improper investigation of emails which Ms. Shapiro had an expectation of privacy.

221.    S. Scott Morrison, Katten Muchin Rosenman, and Daniel C. Spurlock were not, and have never been, counsel for MakeOffices.

222.     S. Scott Morrison, Katten Muchin Rosenman, and Daniel C. Spurlock raided Ms. Shapiro's emails without consent, authorization or knowledge of the Majority Shareholder of MakeOffices, without informing the Board of Directors, without informing Ms. Shapiro and knowing that what they were doing was unlawful. Specifically, in early June 2017 and continuing to the present, Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock accessed the emails of Ms. Shapiro at MakeOffices.

223.     The emails included highly sensitive attorney-client protected communications.

224.     The emails also included MakeOffices' privileged emails with its counsel, through Ms. Shapiro as former General Counsel.

225.     Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock did not, and do not, represent MakeOffices and have no legal authority or legitimate basis to invade MakeOffices' privileged emails.

226.     Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock were legally obligated for a number of reasons to notify Ms. Shapiro of its intent to access and read her email and to obtain Ms. Shapiro's consent or a Court Order.

227.     By invading the privacy of her emails, Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock violated their obligation to work with Ms. Shapiro to preserve the confidences of the communications between Ms. Shapiro and her prior counsel.

228.     By invading the privacy of her emails, Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock violated their obligation to preserve the confidences of the communications of any client of Ms. Shapiro, including MakeOffices.

229. During June 2017, the searches the Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock ran included words "F**k," "c**t," "sex," "sexy," and a variety of other grotesque, outrageous, sexually-explicit, and gender-based search terms.

230. Between June 27, 2017 and July 1, 2017; Katten Muchin Rosenman ran the following searches of Ms. Shapiro's email account: "Undertaking," "Indemnified," "Attorneys Fees," "Ginsburg," "Dimuro," "Bredehoft," "Invoice," "Ethical Duties," "Aid and Direction," "Clark Hill," "Bankroft," "Thorson," "JP Law / Sherry," "Legal@makeoffices.com," "attorney invoice," "Sage Johnson," and "Freeman."

231. Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock conducted the unlawful searches without Ms. Shapiro's consent and were deliberately searching for privileged and private communications.

232. Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock conducted the unlawful searches without the knowledge, consent or authority of Ms. Shapiro.

233. Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock had no legally recognized authority, express, implied, or otherwise, to conduct the searches or review MakeOffices and Ms. Shapiro's private and, in some cases, privileged emails, and these searches and review were illegal.

234. Mr. Morrison and Mr. Spurlock are partners of the law firm Katten Muchin Rosenman.

235. Mr. Morrison and Mr. Spurlock are individually liable to Ms. Shapiro.

236. Katten Muchin Rosenman is vicariously liable for the actions of its partners and employees.

237. Zach Wade, in his capacity as Director of MRP UO, was aware of and assisted S. Scott Morrison, Katten Muchin Rosenman, and Daniel C. Spurlock for the purpose of intruding upon Ms. Shapiro's emails through an improper and illegal investigation of which she had a legitimate expectation of privacy.

238. Defendants intentionally accessed Ms. Shapiro's protected MakeOffices email account, through an improper investigation, and conducted sexually explicit and harassing keyword searches with the intent of causing Ms. Shapiro distress.

239. Defendants intentionally accessed Ms. Shapiro's protected MakeOffices email account, and conducted keyword searches with the names of all her counsel with the intent learning privileged information to use against her.

240. Defendants' searches were unauthorized or exceeded authorized access. Moreover, given Ms. Shapiro's work as General Counsel and Chief of Staff, and her communications with outside corporate counsel and the access to her own counsel's communications, the Defendants had no authority to access the email.

241. The MakeOffices' Operating Agreement does not permit the company's officers – including the CEO – to authorize access to MakeOffices' computer systems for the purposes of conducting sexually explicit searches, harassing company employees, or invading attorney client privileges, which was what occurred here.

242. Defendants obtained information from Ms. Shapiro's email account as a result of their searches.

243. The intrusion by Defendants is highly offensive to an ordinary, reasonable person.

244. By allowing S. Scott Morrison, Katten Muchin Rosenman, and Daniel C. Spurlock, to access Ms. Shapiro's emails Mr. Wade is liable to her for invasion of privacy.

245. By accessing Ms. Shapiro's emails, S. Scott Morrison, Katten Muchin Rosenman, and Daniel C. Spurlock are liable to Ms. Shapiro for invasion of privacy.

246. The Defendants, Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock and Mr. Wade's invasion of privacy and related conduct was intentional, and evinced ill will, recklessness, and willful disregard of Ms. Shapiro's rights, as well as wantonness, oppressiveness, maliciousness, and a spirit of mischief, and therefore punitive damages are warranted and requested.

247. As a direct and proximate result of Defendants' actions, Ms. Shapiro has suffered and continues to suffer severe emotional distress, with physical manifestations, including, but not limited to, heightened anxiety, development of a stress related sleep disturbance, fear of not being able to find a job due to being pregnant, fear of not being hired because of Defendants' defamatory conduct, fear and concern for her future ability to earn a living and provide for her child, diminished self-confidence and self-worth, feelings of helpless and hopelessness, insomnia, nightmares, withdrawal from friends and family, crying, sadness, lack of concentration, humiliation, embarrassment, headaches, exacerbation of her diagnosed hyperemesis gravidarum and general anxiety disorder, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, and medical expenses. Ms. Shapiro has also experienced physical symptoms while thinking about or discussing her former employer, including but not limited to severe panic attacks, nausea and becoming physically ill. Ms. Shapiro is constantly wondering and worrying about whether other potential employers, friends and relatives have heard the highly offensive, false and defamatory statements about her, and whether this will cause her to be unable to obtain and/or sustain

employment. Defendants' conduct has irreparably harmed Ms. Shapiro's quality of life, professionally and personally.

248. Ms. Shapiro has also incurred attorneys' fees and costs as a result of Defendants' conduct.

249. Due to the severity of Defendants' willful, wanton, oppressive, and deliberate conduct Ms. Shapiro is entitled to punitive damages.

**COUNT V**
**VIOLATION OF THE COMPUTER FRAUD**
**AND ABUSE ACT, 18 USC § 1030, et seq.**
**(Against Katten Muchin Rosenman, S. Scott Morrison and Daniel C. Spurlock)**

250. The foregoing allegations are incorporated as realleged herein.

251. MakeOffices protects its confidential, proprietary and trade secret information on a secure computer system to which access is limited and password-protected.

252. MakeOffices' computer system is secured to ensure that personal, confidential, proprietary, and trade secret business information is not kept or accessed outside of the secure computer system.

253. MakeOffices' employee emails constitute computer data.

254. While prevented by the law, the Rules of Professional Responsibility, relevant Ethics Rules, and a Court Order, Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock obtained unfettered access to all of MakeOffices' email accounts, and also obtained the ability to run searches on these accounts, as described earlier and specifically in Count IV above.

255. Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock intentionally accessed Ms. Shapiro's protected MakeOffices email account, and conducted sexually explicit and harassing keyword searches, as well as invading attorney client privileges with the intent of causing Ms. Shapiro distress.

256.   Katten Muchin Rosenman and Mr. Spurlock's searches were unauthorized or exceeded authorized access.

257.   Katten Muchin Rosenman had no authority to access Ms. Shapiro's email because of her privileged communications, attorney client privileged emails in both her capacity as MakeOffices' General Counsel and as a client represented by counsel in the Fairfax lawsuit which was under a Court-ordered Stay.

258.   On the dates of the unauthorized searches, Katten Muchin Rosenman, Mr. Spurlock, and Mr. Morrison represented an adverse party to MakeOffices.

259.   The MakeOffices Operating Agreement does not permit the company's officers – including the CEO – to authorize access to MakeOffices' computer systems for the purposes of harassing company employees or invading attorney-client privileges, which was what occurred here.

260.   Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock obtained private and confidential information from Ms. Shapiro's email account as a result of their searches.

261.   The unauthorized access by Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock resulted in obtaining information from company protected computers.

262.   Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock performed the illegal searches with the intent to use any information against Ms. Shapiro to cause her harm.

263.   Emails obtained from their searches were used to create false and defamatory statements and intentional misrepresentations in terminating Ms. Shapiro's employment for illegal reasons.

264.   Emails obtained from their searches were included in the June 19, 2017 termination letter and attachments.

265. Mr. Morrison and Mr. Spurlock are partners of the law firm Katten Muchin Rosenman.

266. Mr. Morrison and Mr. Spurlock are individually liable to Ms. Shapiro for their conduct.

267. Katten Muchin Rosenman is vicariously liable for the actions of its partners and employees.

268. As a result of Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock's searches, Ms. Shapiro has sustained a loss of at least $5,000 in a one-year period. The loss sustained includes, but is not limited to, loss of protected client confidences, loss of her own client confidences, invasion of privacy, loss of income, loss of severance payment, loss of her employment, and legal and forensics fees.

**COUNT VI**
**DEFAMATION AND DEFAMATION *PER SE***
**(Against S. Scott Morrison, Daniel C. Spurlock and Katten Muchin Rosenman)**

269. The foregoing allegations are incorporated as if re-alleged herein.

270. Mr. Morrison, Mr. Spurlock and Katten Muchin Rosenman made false, intentionally misleading and defamatory statements, and engaged in conduct that amounted to defamation and defamation *per se*, to third parties including Mr. Wade, Mr. Paul, and Ms. Camacho, and the false, intentionally misleading and defamatory statements were republished to other individuals, both in Washington D.C. and Virginia.

271. The defamation includes all the statements set forth in ¶¶88 (a)–(y).

272. The defamatory statements falsely allege Ms. Shapiro committed crimes and/or crimes of moral turpitude.

273. The defamatory statements injure Ms. Shapiro in her profession by attacking her fitness to perform her profession as General Counsel and Chief of Staff of MakeOffices.

274. These statements were intended to convey that Ms. Shapiro was unable to perform her duties as General Counsel and Chief of Staff in a competent and professional manner, and that she should be terminated.

275. The defamatory statements falsely allege Ms. Shapiro committed crimes and/or crimes of moral turpitude.

276. In addition, conducting the computer searches of sexually explicit words and words suggesting ethical violations as set forth in ¶¶ 56 and 57 for Ms. Shapiro's email accounts, which were published to the employees of MakeOffices, suggested that Ms. Shapiro was morally unfit, had engaged in crimes of moral turpitude, and was unfit in her job performance. These searches also constitute defamatory statements.

277. The defamatory statements injure Ms. Shapiro in her profession by attacking her fitness to perform her profession as General Counsel and Chief of Staff of MakeOffices.

278. These statements were intended to convey that Ms. Shapiro was unable to perform her duties as General Counsel and Chief of Staff in a competent and professional manner, and that she should be terminated.

279. These statements were used to terminate Ms. Shapiro "for cause."

280. The conduct by Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock, as described in greater detail above, was motivated by malice, evil, spite, ill-will, and evinced a conscious disregard for the rights of Ms. Shapiro.

281. Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock's words and actions caused prejudice to Ms. Shapiro in her professional reputation and ability to obtain employment.

282.    Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock knew, or should have known, these statements and actions were false and intentionally portrayed Ms. Shapiro in a false and defamatory light, and/or made these statements and engaged in this conduct with reckless disregard as to whether the statements or conduct were false; the statements or conduct were unnecessarily insulting; the language or actions used were stronger than was necessary under the circumstances; and/or Mr. Morrison made the defamatory statements and engaged in defamatory conduct because of hatred, ill will or a desire to injure Ms. Shapiro rather than a fair comment on the subject; and did cause injury to Ms. Shapiro.

283.    Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock's statements concerning Ms. Shapiro were published to third parties, without privilege.

284.    Such comments and actions served to permanently damage Ms. Shapiro's reputation in the eyes of board members and employees of her company, and the CEO to whom she reported.

285.    There was no factual information to support the defamatory statements, and the statements were motivated by Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock's desire to retaliate against Ms. Shapiro, as set forth in greater detail above.

286.    These materially false and misleading statements were made with the intent to harm, and did harm Ms. Shapiro's reputation and good will with MakeOffices, Mr. Wade, Mr. Paul, Ms. Camcho, Mr. Junior and others who became aware of the statements.

287.    The conduct of Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock was made with ill-will, was malicious, wanton and evinced a willful and conscious disregard for Ms. Shapiro's reputation, and further was accomplished in a reckless and grossly negligent manner.

288.    Mr. Morrison and Mr. Spurlock are partners of Katten Muchin Rosenman.

289.   Mr. Morrison and Mr. Spurlock are individually liable to Ms. Shapiro for their conduct.

290.   Katten Muchin Rosenman is vicariously liable for the actions of its employees and partners.

291.   As a direct and proximate result of Defendants' actions, Ms. Shapiro has suffered and continues to suffer loss of good will, and damage to her personal and professional reputation and business.

292.   As a direct and proximate result of Defendants' actions, Ms. Shapiro has suffered and continues to suffer severe emotional distress, with physical manifestations, including, but not limited to, heightened anxiety, development of a stress related sleep disturbance, fear of not being able to find a job due to being pregnant, fear of not being hired because of Defendants' defamatory conduct, fear and concern for her future ability to earn a living and provide for her child, diminished self-confidence and self-worth, feelings of helpless and hopelessness, insomnia, nightmares, withdrawal from friends and family, crying, sadness, lack of concentration, humiliation, embarrassment, headaches, exacerbation of her diagnosed hyperemesis gravidarum and general anxiety disorder, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, and medical expenses. Ms. Shapiro has also experienced physical symptoms while thinking about or discussing her former employer, including but not limited to severe panic attacks, nausea and becoming physically ill. Ms. Shapiro is constantly wondering and worrying about whether other potential employers, friends and relatives have heard the highly offensive, false and defamatory statements about her, and whether this will cause her to be unable to obtain and/or sustain

employment. Defendants' conduct has irreparably harmed Ms. Shapiro's quality of life, professionally and personally.

293. Due to the character and severity of Defendants' willful, wanton, oppressive, and deliberate conduct Ms. Shapiro is entitled to punitive damages

**COUNT VII**
**TORTIOUS INTERFERENCE WITH**
**CONTRACT OR BUSINESS EXPECTANCY**
**(Against S. Scott Morrison, Katten Muchin Rosenman, Daniel C. Spurlock, Ronald D. Paul, and Zach Wade)**

294. The foregoing allegations are incorporated as if realleged herein.

295. Ms. Shapiro was been employed by MakeOffices since 2013 until June 19, 2017. She retained her position despite significant power struggles between the former and current CEOs, Mr. Rahbar and Mr. Wade, and has all times performed her duties in an adequate, if not exemplary, manner.

296. Ms. Shapiro was a highly respected employee of MakeOffices and still enjoys a stellar reputation in the company.

297. Ms. Shapiro had a significant probability and expectation of continued and significant future economic benefit with MakeOffices.

298. Ms. Shapiro was retained as General Counsel and Chief of Staff of MakeOffices when Mr. Wade became CEO of the company April 10, 2017, was told by Mr. Paul and Mr. Wade that she was extremely valuable and highly respected in her position.

299. Ms. Shapiro continued to be given responsibilities of trust.

300. Ms. Shapiro performed her job responsibility without any criticism, and only praise, during the period of April 10, 2017 until her wrongful termination in June 19, 2017.

301.   Defendants employed improper means to interfere with Ms. Shapiro's employment relationship with MakeOffices.

302.   The "improper means" employed by the Defendants included all of the conduct set forth in detail in this Complaint, including, but not limited to discrimination and retaliation in violation of the D.C. Human Rights Act, invasion of privacy, computer trespass and defamation.

303.   Defendants' actions were willful, spiteful, filled with ill will, intentional, and malicious, and evinced a conscious disregard for the rights of Ms. Shapiro.

304.   The Defendants were aware of Ms. Shapiro's employment with MakeOffices and expectation of continued employment and intentionally interfered with it.

305.   Zach Wade intentionally interfered with Ms. Shapiro's employment by choosing to wrongfully terminate her even though he knew the reasons stated in the termination letter and attachments were false, and he knew that he would be leaving Ms. Shapiro without income at a time when she was six months' pregnant.

306.   Ron Paul exerts vast influence over MakeOffices, his company EagleBank, financed through UO Investors, LLC has provided millions of dollars in financing for MakeOffices.

307.   Ron Paul intentionally interfered with Ms. Shapiro's employment and business expectancies derived therefrom by participating in and directing Zach Wade to wrongfully terminate her.

308.   Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock intentionally interfered with Ms. Shapiro's employment and business expectations derived therefrom by defaming Ms. Shapiro, discriminating and retaliating against Ms. Shapiro, aiding and abetting discrimination and retaliation against Ms. Shapiro, ordering Ms. Shapiro be terminated from her

employment, invading the privacy of Ms. Shapiro, conducting sexually explicit searches of Ms.

Shapiro's computers, intentionally committing harm to Ms. Shapiro, and engaging in a

conspiracy to commit all of the tortious acts.

309.   Defendants engaged in concerted action with each other with the intention of

systematically, intentionally, and maliciously interfering with Ms. Shapiro's employment

relationship with MakeOffices.

310.   The intentional interference included creating a sham "for cause" termination to

avoid paying Ms. Shapiro a previously agreed upon $200,000 severance payment.

311.   Defendants had prior knowledge of Ms. Shapiro's severance agreement.

312.   Defendants intentionally interfered with the severance agreement of Ms. Shapiro.

313.   Defendants tortiously interfered with the business expectancies of Ms. Shapiro's

employment.

314.   Mr. Morrison and Mr. Spurlock are partners of the law firm Katten Muchin

Rosenman.

315.   Mr. Morrison and Mr. Spurlock are individually liable to Ms. Shapiro for their

conduct.

316.   Katten Muchin Rosenman is vicariously liable for the actions of its employees

and partners.

317.   The conduct of Defendants was made with ill-will, was malicious, wanton and

evinced a willful and conscious disregard for the rights of Ms. Shapiro, and further was

accomplished in a reckless and grossly negligent manner.

318.   As a direct and proximate result of Defendants' actions, Ms. Shapiro has suffered

and continues to suffer severe emotional distress, with physical manifestations, including, but not

limited to, heightened anxiety, development of a stress related sleep disturbance, fear of not being able to find a job due to being pregnant, fear of not being hired because of Defendants' defamatory conduct, fear and concern for her future ability to earn a living and provide for her child, diminished self-confidence and self-worth, feelings of helpless and hopelessness, insomnia, nightmares, withdrawal from friends and family, crying, sadness, lack of concentration, humiliation, embarrassment, headaches, exacerbation of her diagnosed hyperemesis gravidarum and general anxiety disorder, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, and medical expenses. Ms. Shapiro has also experienced physical symptoms while thinking about or discussing her former employer, including but not limited to severe panic attacks, nausea and becoming physically ill. Ms. Shapiro is constantly wondering and worrying about whether other potential employers, friends and relatives have heard the highly offensive, false and defamatory statements about her, and whether this will cause her to be unable to obtain and/or sustain employment. Defendants' conduct has irreparably harmed Ms. Shapiro's quality of life, professionally and personally.

319. Due to the character and severity of Defendants' willful, wanton, oppressive, and deliberate conduct Ms. Shapiro is entitled to punitive damages

**COUNT VIII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against S. Scott Morrison, Katten Muchin Rosenman, Daniel C. Spurlock, Ronald D. Paul, and Zach Wade)**

320. The foregoing allegations are incorporated as if re-alleged herein.

321. As set forth above, Ms. Shapiro has been struggling with a medical situation resulting in a double mastectomy (for which she took medical leave from MakeOffices), and is

pregnant with her first child who is due in the Fall of 2017 and is suffering from hyperemesis gravidarum, a condition that complicates the pregnancy and is aggravated by stress.

322.    Defendants are aware that Ms. Shapiro has suffered and is suffering from these significant medical challenges;

323.    With this knowledge and awareness, Defendants have purposefully targeted Ms. Shapiro and terminated her because of her health, pregnancy and gender, misrepresented, misled and made false and defamatory statements against Ms. Shapiro to attempt to cover up and justify her termination while she was six months pregnant, to deprive her of her severance and maternity leave, conduct sexually explicit and invasive searches of her private and professional MakeOffices emails, have aided, abetted and intentionally discriminated and retaliated against Ms. Shapiro because of her health condition, pregnancy and gender, have attempted to force Ms. Shapiro to engage or otherwise participate in illegal and unethical conduct, have conspired against Ms. Shapiro to viciously attack Ms. Shapiro's emotional, financial and reputational stability, all with the intent to cause Ms. Shapiro severe emotional distress.

324.    Defendants' conduct was intentional and reckless in that it had the specific purpose of inflicting emotional distress on Ms. Shapiro, was fully intended, and Defendants knew or should have known, that severe emotion distress would likely result, or knew or should have known that severe emotional distress was substantially certain to result from their conduct.

325.    The actions and conduct of the Defendants, as set forth above, were intentional or reckless in that the Defendants had the specific purpose of inflicting emotional distress on Ms. Shapiro, fully intended their conduct, and knew or should have known that severe emotional distress would likely result.

326.   The Defendants' conduct toward Ms. Shapiro was outrageous and intolerable, offending generally accepted standards of decency and morality.

327.   This conduct by Defendants was actuated by malice, spite, and ill will; was willful and wanton; and evinced conscious disregards for the rights of Ms. Shapiro.

328.   The actions of Defendants have severely exacerbated the medical conditions suffered by Ms. Shapiro.

329.   Mr. Morrison and Mr. Spurlock are partners of the law firm Katten Muchin Rosenman.

330.   Mr. Morrison and Mr. Spurlock are individually liable to Ms. Shapiro for their conduct.

331.   Katten Muchin Rosenman is vicariously liable for the actions of its employees and partners.

332.   As a direct and proximate result of Defendants' actions, Ms. Shapiro has suffered and continues to suffer severe emotional distress, with physical manifestations, including, but not limited to, heightened anxiety, development of a stress related sleep disturbance, fear of not being able to find a job due to being pregnant, fear of not being hired because of Defendants' defamatory conduct, fear and concern for her future ability to earn a living and provide for her child, diminished self-confidence and self-worth, feelings of helpless and hopelessness, insomnia, nightmares, withdrawal from friends and family, crying, sadness, lack of concentration, humiliation, embarrassment, headaches, exacerbation of her diagnosed hyperemesis gravidarum and general anxiety disorder, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, and medical expenses. Ms. Shapiro has also experienced physical symptoms while thinking about or

discussing her former employer, including but not limited to severe panic attacks, nausea and becoming physically ill. Ms. Shapiro is constantly wondering and worrying about whether other potential employers, friends and relatives have heard the highly offensive, false and defamatory statements about her, and whether this will cause her to be unable to obtain and/or sustain employment. Defendants' conduct has irreparably harmed Ms. Shapiro's quality of life, professionally and personally.

333. Due to the character and severity of Defendants' willful, wanton, oppressive, and deliberate conduct Ms. Shapiro is entitled to punitive damages.

**COUNT IX –**
**DISCRIMINATORY TERMINATION OF EMPLOYMENT**
**IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT**
**(Against MakeOffices, LLC)**

334. The allegations of the foregoing paragraphs are incorporated as if realleged herein.

335. Ms. Shapiro is a former employee of MakeOffices within the meaning of D.C. Code § 2-1401.02(9).

336. MakeOffices is an employer within the meaning of D.C. Code § 2-1401.02(10).

337. Ms. Shapiro was wrongfully terminated from her position in violation of the D.C. Human Rights Act.

338. Ms. Shapiro was wrongfully terminated in the District of Columbia.

339. Ms. Shapiro is female, pregnant and has been dealing with a medical situation leading up to a double mastectomy (for which she required medical leave from MakeOffices). She also suffers from diagnosed hyperemesis gravidarum, which is aggravated by stress.

340.   Defendants are, and were, aware at all times material thereto, that Ms. Shapiro is female, pregnant, had the double mastectomy and is suffering from hyperemesis gravidarum.

341.   On June 19, 2017, MakeOffices, through its agents and officers, terminated Ms. Shapiro's employment fully aware of her pending pregnancy and expected due date within three months.

342.   Ms. Shapiro was targeted and wrongfully terminated because of her gender, her pregnancy and her health conditions.

343.   Because of the termination Ms. Shapiro will be deprived of maternity leave.

344.   Because of the false and defamatory termination "for cause," Ms. Shapiro will not be provided her Severance.

345.   Ms. Shapiro was wrongfully terminated in the District of Columbia.

346.   Ms. Shapiro's termination constitutes a violation of D.C. Code § 2-1402.11(a)(1).

347.   MakeOffices' conduct in so doing evinced ill will, recklessness, willful disregard of Ms. Shapiro's rights, wantonness, oppressiveness, maliciousness, and a spirit of mischief.

348.   As a direct and proximate result of Defendant's actions, Ms. Shapiro has suffered and continues to suffer severe emotional distress, with physical manifestations, including, but not limited to, heightened anxiety, development of a stress related sleep disturbance, fear of not being able to find a job due to being pregnant, fear of not being hired because of Defendant's defamatory conduct, fear and concern for her future ability to earn a living and provide for her child, diminished self-confidence and self-worth, feelings of helpless and hopelessness, insomnia, nightmares, withdrawal from friends and family, crying, sadness, lack of concentration, humiliation, embarrassment, headaches, exacerbation of her diagnosed hyperemesis gravidarum and general anxiety disorder, past and future loss of income and

benefits of employment, lost career and business opportunities and advancement, and medical expenses. Ms. Shapiro has also experienced physical symptoms while thinking about or discussing her former employer, including but not limited to severe panic attacks, nausea and becoming physically ill. Ms. Shapiro is constantly wondering and worrying about whether other potential employers, friends and relatives have heard the highly offensive, false and defamatory statements about her, and whether this will cause her to be unable to obtain and/or sustain employment. Defendant's conduct has irreparably harmed Ms. Shapiro's quality of life, professionally and personally.

349. As a result of the conduct by Defendant, Ms. Shapiro has incurred attorneys' fees and costs.

350. Due to the severity of MakeOffices' conduct, Ms. Shapiro is entitled to punitive damages.

**COUNT X –**
**RETALIATION IN VIOLATION**
**OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT**
**(Against MakeOffices, LLC)**

351. The allegations of the foregoing paragraphs are incorporated as if re-alleged herein.

352. Ms. Shapiro is a former employee of MakeOffices within the meaning of D.C. Code § 2-1401.02(9).

353. MakeOffices is an employer within the meaning of D.C. Code § 2-1401.02(10).

354. Ms. Shapiro was wrongfully terminated from her position in violation of the D.C. Human Rights Act.

355. Ms. Shapiro was wrongfully terminated in the District of Columbia.

356. Pursuant to D.C. Code § 2-1401.01, Ms. Shapiro had the right to participate in employment free of discrimination:

> Every individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the District and to have an equal opportunity to participate in all aspects of life, including, but not limited to, in employment, in places of public accommodation, resort or amusement, in educational institutions, in public service, and in housing and commercial space accommodations.

357. Pursuant to D.C. Code § 2-1401.61, it is unlawful for any person to encourage, coerce or request discriminatory action be taken:

**Coercion or retaliation.**

(a) It shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter.

(b) It shall be an unlawful discriminatory practice for any person to require, request, or suggest that a person retaliate against, interfere with, intimidate or discriminate against a person, because that person has opposed any practice made unlawful by this chapter, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing authorized under this chapter.

(c) It shall be an unlawful discriminatory practice for any person to cause or coerce, or attempt to cause or coerce, directly or indirectly, any person to prevent any person from complying with the provisions of this chapter.

358. Ms. Shapiro is female and pregnant with her first child. She also recently underwent a double mastectomy.

359. Ms. Shapiro questioned and objected to being treated differently on the basis of her gender, health and pregnancy. This constituted protected activity.

360. Based on the conduct as alleged, MakeOffices interfered with Ms. Shapiro's right to enjoy her employment free of discrimination and retaliation.

361.   MakeOffices discriminated and retaliated against Ms. Shapiro in violation of her protected rights based on gender and disability in violation of the D.C. Human Rights Act.

362.   Based on the conduct as alleged, MakeOffices, coerced, threatened, and interfered with Ms. Shapiro's rights as protected under the D.C. Human Rights Act; and terminated her employment.

363.   Defendant's actions were willful, spiteful, filled with ill will, recklessness, intentional, and malicious, and evinced a conscious disregard for the rights of Ms. Shapiro.

364.   Based on the conduct as alleged, MakeOffices discriminated against Ms. Shapiro in violation of the rights granted to her under the D.C. Human Rights Act.

365.   Based on the conduct as alleged, MakeOffices discriminated and retaliated against Ms. Shapiro by coercing, threatening, and interfering with Ms. Shapiro's rights as granted to her under the D.C. Human Rights Act.

366.   The Defendant's discriminatory and retaliatory conduct was intentional, and it evinced ill will, recklessness, and willful disregard of Ms. Shapiro's rights, as well as wantonness, oppressiveness, maliciousness, and a spirit of mischief.

367.   The Defendant's discriminatory and retaliatory conduct had the effect and consequence of violating the D.C. Human Rights Act.

368.   As a direct and proximate result of Defendant's actions, Ms. Shapiro has suffered and continues to suffer severe emotional distress, with physical manifestations, including, but not limited to, heightened anxiety, development of a stress related sleep disturbance, fear of not being able to find a job due to being pregnant, fear of not being hired because of Defendant's defamatory conduct, fear and concern for her future ability to earn a living and provide for her child, diminished self-confidence and self-worth, feelings of helpless and hopelessness,

insomnia, nightmares, withdrawal from friends and family, crying, sadness, lack of concentration, humiliation, embarrassment, headaches, exacerbation of her diagnosed hyperemesis gravidarum and general anxiety disorder, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, and medical expenses. Ms. Shapiro has also experienced physical symptoms while thinking about or discussing her former employer, including but not limited to severe panic attacks, nausea and becoming physically ill. Ms. Shapiro is constantly wondering and worrying about whether other potential employers, friends and relatives have heard the highly offensive, false and defamatory statements about her, and whether this will cause her to be unable to obtain and/or sustain employment. Defendant's conduct has irreparably harmed Ms. Shapiro's quality of life, professionally and personally.

369. Ms. Shapiro has also incurred attorneys' fees and costs as a result of Defendant's conduct.

370. Due to the character and severity of Defendant's willful, wanton, oppressive, and deliberate conduct Ms. Shapiro is entitled to punitive damages.

**COUNT XI –**
**BREACH OF CONTRACT – SEVERANCE AGREEMENT**
**(Against MakeOffices, LLC)**

371. The allegations of the foregoing paragraphs are incorporated as if reallged herein.

372. On July 18, 2016 MakeOffices offered Ms. Shapiro an Agreement providing for severance in the amount of $200,000 ("Severance Agreement"). More specifically, the Agreement reads:

> In the event that your employment with the Company is terminated without Cause before the first anniversary of the date set forth on the signature page to this letter, you shall be entitled to Two Hundred Thousand Dollars ($200,000) payable in twelve (12) equal monthly installments, subject to applicable taxes and withholdings...

373. Ms. Shapiro accepted this offer by signature on July 18, 2016.

374. Ms. Shapiro was terminated prior to the first anniversary of July 18, 2016.

375. Ms. Shapiro was wrongfully discharged from her employment.

376. Ms. Shapiro was not legitimately terminated for cause.

377. The Agreement is valid and enforceable.

378. Ms. Shapiro has not violated the terms of the Severance Agreement.

379. MakeOffices has materially breached this agreement by terminating Ms. Shapiro not legitimately for cause, and refusing payment of the agreed upon severance amount.

380. Section e of the agreement provides for attorneys fees incurred for enforcement and recovery of damages. Specifically, "In the event of default or breach of this Agreement by Company, Employee shall be entitled to enforce the Agreement and recover damages from Company including, but not limited to, reasonable attorney's fees."

381. As a result of the breach, Ms. Shapiro has suffered the loss of the $200,000 severance, plus interest.

382. Pursuant to Section e of the Severance Agreement Ms. Shapiro seeks reimbursement for attorneys' fees and costs incurred in connection with collection of her severance amount pursuant to the breach by MakeOffices.

**COUNT XII –**
**RETALIATORY TERMINATION OF EMPLOYMENT**
**IN VIOLATION OF PUBLIC POLICY**
**(Against MakeOffices, LLC)**

383. The allegations of the foregoing paragraphs are incorporated as if realleged herein.

384. As set forth above, MakeOffices, controlled by minority shareholders directed by Mr. Paul and Mr. Wade, demanded that Ms. Shapiro sign an agreement prepared by Katten Muchin Rosenman, Mr. Morrison and Mr. Spurlock that would have caused Ms. Shapiro to violate the law, as well as participate in, condone and engage in unethical conduct.

385. Ms. Shapiro refused to sign the agreement because it would breach her fiduciary duties to MakeOffices and the majority shareholder, as well as cause her to condone, participate in and engage in unethical conduct.

386. Ms. Shapiro is a lawyer and is governed by the Rules of Professional Responsibility and the applicable Ethics Rules.

387. The demands for Ms. Shapiro to sign the agreement were demands to engage in illegal conduct.

388. As a result of her refusal to sign the illegal and unethical agreement, MakeOffices terminated her employment.

389. The termination is wrongful retaliation.

390. Ms. Shapiro was wrongfully terminated in the District of Columbia.

391. MakeOffices' conduct in so doing evinced ill will, recklessness, willful disregard of Ms. Shapiro's rights, wantonness, oppressiveness, maliciousness, and a spirit of mischief.

392. As a direct and proximate result of Defendant's actions, Ms. Shapiro has suffered and continues to suffer severe emotional distress, with physical manifestations, including, but not

limited to, heightened anxiety, development of a stress related sleep disturbance, fear of not being able to find a job due to being pregnant, fear of not being hired because of Defendant's defamatory conduct, fear and concern for her future ability to earn a living and provide for her child, diminished self-confidence and self-worth, feelings of helpless and hopelessness, insomnia, nightmares, withdrawal from friends and family, crying, sadness, lack of concentration, humiliation, embarrassment, headaches, exacerbation of her diagnosed hyperemesis gravidarum and general anxiety disorder, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, and medical expenses. Ms. Shapiro has also experienced physical symptoms while thinking about or discussing her former employer, including but not limited to severe panic attacks, nausea and becoming physically ill. Ms. Shapiro is constantly wondering and worrying about whether other potential employers, friends and relatives have heard the highly offensive, false and defamatory statements about her, and whether this will cause her to be unable to obtain and/or sustain employment. Defendant's conduct has irreparably harmed Ms. Shapiro's quality of life, professionally and personally.

393. Due to the severity of MakeOffices' conduct, Ms. Shapiro is entitled to punitive damages.

**COUNT XIII**
**CIVIL CONSPIRACY**
**(against Katten Muchin Rosenman, S. Scott Morrison, Daniel C. Spurlock, Ronald D. Paul, and Zach Wade)**

394. The foregoing allegations are incorporated as if re-alleged herein.

395. Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock, Mr. Paul, and Mr. Wade are referred to collectively as "Conspiracy Defendants."

396. The Conspiracy Defendants willfully entered into an agreement to tortiously interfere with Ms. Shapiro's at-will employment with MakeOffices ("Employment Conspiracy").

397. The Conspiracy Defendants willfully entered into an agreement to tortiously interfere with Ms. Shapiro's Severance Agreement with MakeOffices ("Severance Conspiracy").

398. The Conspiracy Defendants willfully entered into an agreement to invade the privacy of Ms. Shapiro ("Invasion of Privacy Conspiracy").

399. The Conspiracy Defendants willfully entered into an agreement to violate the Computer Fraud and Abuse Act ("CFAA Conspiracy").

400. The Conspiracy Defendants willfully entered into an agreement to intentionally inflict emotional distress upon Ms. Shapiro ("Intentional Infliction Conspiracy").

401. The Employment Conspiracy, Severance Conspiracy, Invasion of Privacy Conspiracy, CFAA Conspiracy, and Intentional Infliction Conspiracy (Collectively "Conspiracies") were formed out of malice, ill will and spite.

402. As a direct and proximate result of the Conspiracies, Ms. Shapiro was wrongfully terminated on June 19, 2017.

403. As a direct and proximate result of the Severance Conspiracy, MakeOffices breached its Severance Agreement contractual obligations to Ms. Shapiro.

404. The Conspiracy Defendants employed improper means in furtherance of their Conspiracies.

405. The Conspiracy Defendants unlawfully accessed Ms. Shapiro's emails in furtherance of the Conspiracies.

406. The "improper means" employed by the Conspiracy Defendants included all of the conduct set forth in detail in this Complaint, including, but not limited to defamation,

discrimination and retaliation in violation of the D.C. Human Rights Act, invasion of privacy, intentional infliction of emotional distress and computer trespass.

407. The Conspiracy Defendants' actions were willful, spiteful, filled with ill will, intentional, and malicious, and evinced a conscious disregard for the rights of Ms. Shapiro.

408. Katten Muchin Rosenman, Mr. Morrison, Mr. Spurlock and Mr. Paul intentionally furthered the Conspiracies by directing MakeOffices and Zach Wade to wrongfully terminate Ms. Shapiro in violation of the DC Human Rights Act.

409. The direction by Mr. Morrison, Mr. Spurlock, and Katten Muchin Rosenman to wrongfully terminate Ms. Shapiro was executed in part to profit off of fees generated by representing their clients against Ms. Shapiro.

410. This collusion is evidenced by Katten Muchin Rosenman, Mr. Morrison, and Mr. Spurlock drafting the June 19, 2017 termination letter and attachment.

411. The termination letter even references Ms. Shapiro as a "Defendant" and Mr. Morrison's clients as "Plaintiffs."

412. The numerous connections to Katten Muchin Rosenman, Mr. Morrison, and Mr. Spurlock in the termination letter and attachments evidence a conspiracy between the Conspiracy Defendants.

413. Ms. Shapiro was retained as General Counsel and Chief of Staff of MakeOffices when Mr. Wade became CEO of the company April 10, 2017 and performed in an exemplary manner and without any performance issue until her wrongful termination in June 19, 2017.

414. Mr. Morrison and Mr. Spurlock are partners of the law firm Katten Muchin Rosenman.

415.    Mr. Morrison and Mr. Spurlock are individually liable to Ms. Shapiro for their conduct.

416.    Katten Muchin Rosenman is vicariously liable for the actions of its employees and partners.

417.    As a direct and proximate result of Defendants' actions, Ms. Shapiro has suffered and continues to suffer severe emotional distress, with physical manifestations, including, but not limited to, heightened anxiety, development of a stress related sleep disturbance, fear of not being able to find a job due to being pregnant, fear of not being hired because of Defendants' defamatory conduct, fear and concern for her future ability to earn a living and provide for her child, diminished self-confidence and self-worth, feelings of helpless and hopelessness, insomnia, nightmares, withdrawal from friends and family, crying, sadness, lack of concentration, humiliation, embarrassment, headaches, exacerbation of her diagnosed hyperemesis gravidarum and general anxiety disorder, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, and medical expenses. Ms. Shapiro has also experienced physical symptoms while thinking about or discussing her former employer, including but not limited to severe panic attacks, nausea and becoming physically ill. Ms. Shapiro is constantly wondering and worrying about whether other potential employers, friends and relatives have heard the highly offensive, false and defamatory statements about her, and whether this will cause her to be unable to obtain and/or sustain employment. Defendants' conduct has irreparably harmed Ms. Shapiro's quality of life, professionally and personally.

418. As a direct and proximate result of these actions, Mr. Shapiro has been irreparably harmed, will continue to be irreparably injured, and is threatened with irreparable injury, and has suffered special damages, including actual past, current and future financial losses, loss of good will, loss of her severance pay, loss of agreed payment of attorneys fees, and other pecuniary and non-pecuniary damages.

419. Due to the character and severity of Defendants' willful, wanton, oppressive, and deliberate conduct Ms. Shapiro is entitled to punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff JAIMIE SHAPIRO requests that this Court enter Judgment in her favor, and against the Defendants, jointly and severally, on the above Counts as applicable to each, and further:

(a) Award Ms. Shapiro compensatory damages on each of the above-stated Counts as determined by the jury, in an amount no greater than $50 million; and in addition

(b) Award Ms. Shapiro punitive and exemplary damages of on Counts I, II, III, IV, VI, VII, VIII, IX, X, XII and XIII, in the amount determined by the jury, in an amount no greater than $150 million; and in addition

(c) Award Ms. Shapiro appropriate front pay and back pay, including all lost income and benefits of employment both past and future; and in addition

(d) Award Ms. Shapiro reasonable attorneys' fees and the costs of this action on Counts I, II, III, IV, V, IX, X and XI under D.C. Code § 2-1403.13(a)(1)(E) as provided in D.C. Code § 2-1403.16(b); and pursuant to 18 U.S. C. § 1030(g) as defined in U.S. C. § 1030(e)(11); and pursuant to section (e) of the Severance Agreement; and in addition

(e) Declare that the Defendants have violated the District of Columbia Human Rights Act; and in addition

(f) Enjoin the Defendants from further violations of the District of Columbia Human Rights Act; and in addition,

(g) Enjoin the Defendants from further harassment and contact with Ms. Shapiro; and in addition,

(h) Revoke all permits, licenses, franchises, benefits, exemptions or advantages issued by or on behalf of the government of the District of Columbia to Defendants, pursuant to D.C. Code § 2-1402.67; and in addition

(i) Award Ms. Shapiro such other and further relief as may be appropriate under the circumstances.

**JURY DEMAND**

**PLAINTIFF JAIMIE SHAPIRO DEMANDS A TRIAL BY JURY.**

*/S/ ELAINE CHARLSON BREDEHOFT*

Elaine Charlson Bredehoft
D.C. Bar. No. 441425
Carla D. Brown
D.C. Bar No. 474097
David M. Trinnes
D.C. Bar No. 1001667
CHARLSON BREDEHOFT
COHEN & BROWN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile
*Counsel for Plaintiff, Jaimie Shapiro*



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

JAIMIE SHAPIRO
Plaintiff

vs.

Case Number 2017 CA 005368 B

KATTEN MUCHIN ROSENMAN LLP, *et al.*
Defendant

## SUMMONS

To the above named Defendant: KATTEN MUCHIN ROSENMAN LLP (Serve: National Registered Agents Inc.)

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Elaine Charlson Bredehoft
Name of Plaintiff's Attorney

11260 Roger Bacon Drive, Suite 201
Address
Reston, VA 20190

(703) 318-6800
Telephone

Clerk of the Court

By
Deputy Clerk

Date 08/07/2017

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

Demandante

contra

Número de Caso:

Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

Nombre del abogado del Demandante

Por:
Subsecretario

Dirección

Fecha

Teléfono

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, ***NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO***.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

JAIMIE SHAPIRO
Plaintiff

vs.

Case Number 2017 CA 005368 B

KATTEN MUCHIN ROSENMAN LLP, *et al.*
Defendant

## SUMMONS

To the above named Defendant: S. SCOTT MORRISON

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Elaine Charlson Bredehoft
Name of Plaintiff's Attorney
11260 Roger Bacon Drive, Suite 201
Address Reston, VA 20190
(703) 318-6800
Telephone

*Clerk of the Court*

By ________ Deputy Clerk

Date 08/07/2017

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL

**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

______________________________ Demandante

contra

Número de Caso: ______________________

______________________________ Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

______________________________
Nombre del abogado del Demandante

______________________________
Dirección

______________________________

Por: ______________________________
Subsecretario

Fecha ______________________________

______________________________
Teléfono

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, ***NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO***.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

JAIMIE SHAPIRO
Plaintiff

vs.

Case Number 2017 CA 005368 B

KATTEN MUCHIN ROSENMAN LLP, *et al.*
Defendant

**SUMMONS**

To the above named Defendant: DANIEL C. SPURLOCK

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Elaine Charlson Bredehoft
Name of Plaintiff's Attorney

11260 Roger Bacon Drive, Suite 201
Address

Reston, VA 20190

(703) 318-6800
Telephone

*Clerk of the Court*

By ______ Deputy Clerk

Date 08/07/2017

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, ***DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.***

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

______________________________ Demandante

contra

Número de Caso: ______________________________

______________________________ Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

______________________________
Nombre del abogado del Demandante

Por: ______________________________
Subsecretario

______________________________
Dirección

______________________________

Fecha ______________________________

______________________________
Teléfono

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

JAIMIE SHAPIRO
Plaintiff

vs.

Case Number 2017 CA 005368 B

KATTEN MUCHIN ROSENMAN LLP, *et al.*
Defendant

## SUMMONS

To the above named Defendant: RONALD D. PAUL

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Elaine Charlson Bredehoft
Name of Plaintiff's Attorney
11260 Roger Bacon Drive, Suite 201
Address
Reston, VA 20190
(703) 318-6800
Telephone

*Clerk of the Court*

By [signature]
Deputy Clerk

Date 08/07/2017

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

________________________________
Demandante

contra

Número de Caso: ____________________

________________________________
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

________________________________
Nombre del abogado del Demandante

Por: ________________________________
Subsecretario

________________________________
Dirección

________________________________

Fecha ________________________________

________________________________
Teléfono

如需翻译,请打电话 (202) 879-4828　Veuillez appeler au (202) 879-4828 pour une traduction　Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요　የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

JAIMIE SHAPIRO
Plaintiff

vs.

Case Number 2017 CA 005368 B

KATTEN MUCHIN ROSENMAN LLP, *et al.*
Defendant

**SUMMONS**

To the above named Defendant: ZACH WADE

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Elaine Charlson Bredehoft
Name of Plaintiff's Attorney

11260 Roger Bacon Drive, Suite 201
Address

Reston, VA 20190

(703) 318-6800
Telephone

*Clerk of the Court*

By Deputy Clerk

Date 08/07/2017

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, ***DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.***

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL

**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

______________________________
Demandante

contra

Número de Caso: ______________________________

______________________________
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

______________________________
Nombre del abogado del Demandante

Por: ______________________________
Subsecretario

______________________________
Dirección

______________________________

Fecha ______________________________

______________________________
Teléfono

如需翻译,请打电话 (202) 879-4828　　Veuillez appeler au (202) 879-4828 pour une traduction　　Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요　　የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

JAIMIE SHAPIRO
Plaintiff

vs.

Case Number 2017 CA 005368 B

KATTEN MUCHIN ROSENMAN LLP, *et al.*
Defendant

## SUMMONS

To the above named Defendant: MAKEOFFICES, LLC

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Elaine Charlson Bredehoft
Name of Plaintiff's Attorney

11260 Roger Bacon Drive, Suite 201
Address
Reston, VA 20190

(703) 318-6800
Telephone

*Clerk of the Court*

By ______________________
Deputy Clerk

Date 08/07/2017

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

______________________________
Demandante

contra

Número de Caso: ________________

______________________________
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

______________________________
Nombre del abogado del Demandante

______________________________
Dirección

Por: ______________________________
Subsecretario

______________________________

Fecha ______________________________

______________________________
Teléfono

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

JAIMIE SHAPIRO

Case Number: 2017 CA 005368 B

vs

Date: 8-2-2017

KATTEN MUCHIN ROSENMAN LLP, *et al.*

☐ One of the defendants is being sued in their official capacity.

Name: *(Please Print)* Elaine Charlson Bredehoft

Firm Name: Charlson Bredehoft Cohen & Brown, PC

Telephone No.: (703) 318-6800

Six digit Unified Bar No.: 441425

Relationship to Lawsuit
☒ Attorney for Plaintiff
☐ Self (Pro Se)
☐ Other:

TYPE OF CASE: ☐ Non-Jury ☒ 6 Person Jury ☐ 12 Person Jury

Demand: $ $150,000,000+

Other:

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: Judge: Calendar #:

Case No.: Judge: Calendar#:

NATURE OF SUIT: *(Check One Box Only)*

**A. CONTRACTS**

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☒ 13 Employment Discrimination
☐ 15 Special Education Fees

**COLLECTION CASES**

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration Award (Collection Cases Only)
☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation Under $25,000 Consent Denied

**B. PROPERTY TORTS**

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)
☐ 03 Destruction of Private Property
☐ 04 Property Damage
☐ 05 Trespass

**C. PERSONAL TORTS**

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud
☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile, Not Malpractice)
☐ 17 Personal Injury- (Not Automobile, Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE ☐ IF USED

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment
- ☐ 17 Merit Personnel Act (OEA) (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify, Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)
- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as Judgment [ D.C. Code § 2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code § 42-3301, et seq.)
- ☐ 21 Petition for Subpoena [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1) (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)
- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

/S/ ELAINE CHARLSON BREDEHOFT — Attorney's Signature

08/02/2017 — Date



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

JAIMIE SHAPIRO
Vs. C.A. No. 2017 CA 005368 B
KATTEN MUCHIN ROSENMAN LLP et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge JOHN M CAMPBELL
Date: August 7, 2017
Initial Conference: 9:30 am, Friday, November 03, 2017
Location: Courtroom 519
500 Indiana Avenue N.W.
WASHINGTON, DC 20001

Caio.doc

**ADDENDUM TO INITIAL ORDER AFFECTING ALL MEDICAL MALPRACTICE CASES**

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Robert E. Morin